UNITED STATES of America

v.

NICOLET, INC. and Turner and
Newall, PLC

v.

TURNER & NEWALL PLC.

Appeal of NICOLET, INC.

Appeal of TURNER & NEWALL PLC.

Nos. 88–1079, 88–1110.

United States Court of Appeals,
Third Circuit.

Argued July 12, 1988.

Decided Sept. 16, 1988.

Douglas J. Smillie (argued), Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellant, Nicolet, Inc.

Jon Brooks (argued), John P. Mason, Dechert, Price & Rhoads, Philadelphia, Pa., for Turner & Newall PLC.

Kathleen P. Dewey (argued), Jacques B. Gelin, David Street, Attys., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., Roger J. Marzulla, Asst. Atty. Gen., Edward S.G. Dennis, Jr., U.S. Atty., Virginia Gibson–Mason, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Before SLOVITER, SCIRICA, and
WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

After the United States had initiated this action to recover costs expended in the clean-up of a hazardous waste site, defendant petitioned for reorganization under Chapter 11 of the Bankruptcy Code. The district court ruled that the automatic bankruptcy stay did not apply to the government's action, even though the complaint sought a money judgment for pre-petition derelictions. We agree that the case should proceed to trial and, moreover, concur in the district court's admonition that the government may not enforce any judgment it might obtain. We conclude also that we have appellate jurisdiction under the more relaxed concepts of finality appli-

cable to bankruptcy proceedings. Accordingly, we will affirm the order of the district court.

Acting under the authority granted it by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9604, the United States filed this suit in the district court against defendant Nicolet on May 30, 1985. The complaint sought reimbursement of environmental response costs expended and to be expended in the future to clean-up an asbestos site in Ambler, Pennsylvania. The Environmental Protection Agency had engaged private contractors to abate the hazard from two waste piles and incurred costs of $1 million. The agency seeks reimbursement of this sum and an additional $300,000 in future remedial costs.

Although at the time of the clean-up, the affected sites were owned by Nicolet, they had been purchased in 1982 from a wholly-owned subsidiary of Turner & Newall. Nicolet joined Turner & Newall as a third-party defendant, seeking indemnification or contribution. The United States then amended its complaint to name Turner & Newall as an original defendant.

Some time later, in July 1987, Nicolet filed for reorganization under Chapter 11 of the Bankruptcy Code. The district court, assuming that the proceedings were subject to the automatic stay provisions of the Code, 11 U.S.C. § 362, placed this CERCLA suit in civil suspense. The United States objected to the district court's order and promptly moved for reconsideration. The government argued that its action was a suit by a governmental unit to enforce its police or regulatory power, a proceeding expressly exempt from the automatic stay under 11 U.S.C. § 362(b)(4). The district court agreed and directed that the case be transferred from the suspense file to the trial calendar. *United States v. Nicolet, Inc.*, 81 B.R. 310 (E.D.Pa.1988).

Nicolet and Turner & Newall have both appealed. Nicolet contends that, because the government seeks to secure a judgment for pre-petition expenditures, its suit is simply an attempt to collect money and thus outside the scope of the police power exemption. Turner & Newall asserts that Nicolet is an indispensable party, a status which demands that if the automatic stay is imposed as to Nicolet, proceedings against all other defendants should also be suspended. The government maintains that the case should proceed to trial, emphasizing that—assuming a verdict for the agency—no execution on the judgment would be sought.

## I.

Before reaching the merits, we are obliged first to assure ourselves of our appellate jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Generally, the stay of a civil action is interlocutory and not appealable. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —— U.S. ——, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 10–11 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983); *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 735 (3d Cir.1983); *Stateside Mach. Co. v. Alperin*, 526 F.2d 480, 482 (3d Cir.1975). Rather than producing a final order which ends the litigation on the merits, the denial of a stay ensures that the litigation will proceed. *Gulfstream Aerospace Corp.*, —— U.S. at ——, 108 S.Ct. at 1136. However, in bankruptcy cases an order lifting the statutory automatic stay is appealable, *Moxley v. Comer (In re Comer)*, 716 F.2d 168 (3d Cir.1983), and a denial of relief from the stay may also be appealable, *In re West Electronics*, 852 F.2d 79 (3d Cir.1988).

The government disputes the application of these precedents to the case at hand, noting that this appeal is taken from an order issued by the district court in the exercise of its original jurisdiction. In contrast, our decisions in *Comer* and *West Electronics* involved challenges to orders entered by district courts in their appellate roles over rulings of a bankruptcy judge. This purported distinction requires that we determine our statutory basis for jurisdiction.

### A.

Appeals in bankruptcy cases generally come to us via 28 U.S.C. § 158(d) which reads:

"The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered [by the district courts in reviewing orders of bankruptcy judges]...."

Here, however, no bankruptcy judge's order was challenged; the original order appealed from was entered by the district court. Consequently, section 158(d) is not an available predicate for jurisdiction. *See In re Amatex Corp.*, 755 F.2d 1034, 1038 (3d Cir.1985).

This result illustrates the gap existing in the procedure Congress created to govern bankruptcy appeals. Section 158(a) grants the district courts appellate authority over rulings entered by bankruptcy judges. Additional review in the courts of appeals of the district judges' appellate dispositions is then explicitly authorized in section 158(d). However, no provision addresses the courts of appeals' authority to review orders entered by the district courts in their non-appellate bankruptcy role. Therefore, the only available review of original orders entered by the district courts lies under the general appeal provision, 28 U.S.C. § 1291. *See* 16 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3926, at 82 (Supp. 1987).

We turn then to section 1291 which authorizes us to exercise jurisdiction over "appeals from all final decisions of the district courts of the United States." Although the order before us unquestionably is a "decision of the district court," whether it properly may be characterized as "final" is not as obvious. As noted earlier, in the general run of civil cases, an order refusing to stay the trial of a case is not appealable.

The matter at hand, however, is inextricably intertwined with a pending bankruptcy proceeding, a circumstance which initially prompted the district judge to stay the trial in accordance with the bankruptcy automatic stay provisions. Whether this appeal's bankruptcy nature should color our construction of finality is thus the threshold inquiry.

Preliminarily, we recognize that this precise issue could have come to us as the result of a bankruptcy judge's order, had the United States applied in that forum for a lifting of the automatic stay. Arriving in that posture, our jurisdiction would have been beyond peradventure. That being so, consistency in judicial administration requires us to consider here whether we should adopt the law developed under section 158(d) as the definition of "finality" in section 1291 bankruptcy appeals.

A similar situation was presented to our court in *In Re Amatex*. In that asbestos personal injury action, the district judge had entered the challenged order after the defendant had petitioned for Chapter 11 reorganization. We stated there that the "concept of 'finality' for purposes of appellate jurisdiction should be viewed functionally." *Amatex*, 755 F.2d at 1039. Although, as here, section 158(d) could not provide appellate jurisdiction, we explained that our views on final orders appropriately should be "informed by notions of finality in bankruptcy appeals." *Id.* We noted that "while 'finality,' interpreted functionally, might mean something different in a bankruptcy case from what it does in other cases, section 1291 is flexible enough to be applied differently depending on the circumstances." *Id.* (quoting *In re UNR Indus., Inc.*, 725 F.2d 1111, 1115 (7th Cir. 1984)).

The Court of Appeals for the First Circuit took the same approach in *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553 (1st Cir.1986). The court there reviewed a decision issued by the district court in the exercise of its original jurisdiction. Finding that the case was closely connected with a bankruptcy proceeding, the court discerned no reason "for interpreting the word 'final' in § 1291 differently from the way we interpreted it in §§ 1293(b) and 158(d)." *Id.* at 558.

Treatise commentary also favors this result. Professors Wright, Miller, and Cooper conclude that "[r]eliance on § 1291 need not lead to different finality results

according to the circumstance whether the district court order was entered initially or on review of an order entered by a bankruptcy judge. Whatever measure of distinctive analysis is appropriate to bankruptcy proceedings can be applied under § 1291 as well as § 158(d)." 16 Wright, Miller & Cooper, *supra* § 3926, at 85.

We are aware that an opinion by the Ninth Circuit Court of Appeals has favored a more restrictive reading of section 1291. *See Cannon v. Hawaii Corp.*, 796 F.2d 1139, 1141 & n. 1 (9th Cir.1986). That holding is, however, inconsistent with precedent in this and other Courts of Appeals as well as an earlier case before a panel of that same court, *Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 805 (9th Cir. 1985). We are not dissuaded by the concerns discussed by the court in *Cannon* and decline to follow its reasoning.

The Supreme Court has instructed that the criteria determining finality "are not abstractions but have reference to very real interests—not merely those of the immediate parties, but, more particularly, those that pertain to the smooth functioning of our judicial system." *Budinich v. Becton Dickinson & Co.*, —— U.S. ——, 108 S.Ct. 1717, 1721, 100 L.Ed.2d 178 (1988) (quoting *Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 69, 68 S.Ct. 972, 977, 92 L.Ed. 1212 (1948)). In fashioning rules of appealability under section 1291, the courts' focus should lie on "categories of cases" rather than mere case labels. *Van Cauwenberghe v. Biard*, —— U.S. ——, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988). Our precedents have followed this mandate faithfully, applying a functional approach to finality in bankruptcy cases. We will not depart from that course here. We hold that in the bankruptcy setting present in this case, our section 1291 jurisdiction mirrors that under section 158(d).

**B.**

In discussing finality under section 158(d),[1] we have observed that analysis of final orders in bankruptcy proceedings differs from that in ordinary civil litigation. Considerations unique to bankruptcy cause us less trepidation over strict interpretation of that requirement than in appeals under section 1291 generally. *Comer*, 716 F.2d at 171; *Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil)*, 689 F.2d 445, 449 (3d Cir.1982), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983).

We have found a pragmatic and less technical approach to finality to be more appropriate in bankruptcy proceedings that often are protracted and involve numerous parties asserting various claims. "To delay resolution of discrete claims until after final approval of a reorganization plan, for example, would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan." *Clark v. First State Bank (In re White Beauty View)*, 841 F.2d 524, 526 (3d Cir.1988). *See also F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 104 (3d Cir.1988), *petition for cert. filed*, —— U.S. ——, 109 S.Ct. 137, 101 L.Ed.2d —— (1988); *Walsh Trucking Co. v. Insurance Co. of North America*, 838 F.2d 698, 701 (3d Cir.1988); *Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 157–58 (3d Cir.1987); *In re Jeannette Corp.*, 832 F.2d 43, 45 (3d Cir.1987); *Southeastern Sprinkler Co. v. Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir.1987); *In re Christian*, 804 F.2d 46, 48 (3d Cir.1986); *Brown v. Pennsylvania State Employees Credit Union*, 803 F.2d 120, 121–22 (3d Cir.1986).

In *Comer*, a debtor appealed from an order lifting the automatic stay, a ruling

---

1. Congress revamped the federal bankruptcy scheme in 1984 with the enactment of the Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98–353, 98 Stat. 333 (1984). Presently codified at 28 U.S.C. § 158(d), section 104(a) of the Act outlined the jurisdiction of the courts of appeals to review bankruptcy orders. This provision replaced 28 U.S.C. § 1293 under

which several of our precedents were decided. However, because both provisions contain the same essential language, we have concluded that the earlier cases offer reliable precedent in interpreting section 158(d). *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 n. 3 (3d Cir. 1988); *In re Jeannette Corp.*, 832 F.2d 43, 45 n. 1 (3d Cir.1987).

which would have permitted foreclosure actions against the debtor's property to proceed. We commented that the challenged order ended the particular controversy between the debtor and creditors and that nothing more needed to be done on the matter by the district or bankruptcy judges. *Comer,* 716 F.2d at 172. We concluded that, given the spectre of impending foreclosure, the ruling was not one which could await final resolution of the bankruptcy proceeding. *Id.* Therefore, we entertained the appeal.

Likewise, in *West Electronics* the bankruptcy judge refused to lift the automatic stay so that the government could terminate a contract with the debtor, and the district court affirmed. We determined there that the issue was purely one of law, requiring no further factual or legal development. "[T]he consequence of the bankruptcy court's decision was to reject the government's legal positions as the passage of time would not have made them more tenable." *West Electronics,* 852 F.2d at 82. In those circumstances, we were persuaded that the order was final for purposes of appeal.[2] *See also Crocker Nat'l Bank v. American Mariner Indus., Inc.,* 734 F.2d 426, 429 (9th Cir.1984) (Congress intended courts to adjudicate expeditiously, apart from the proceeding as a whole, complaints for relief from automatic bankruptcy stay).

The automatic bankruptcy stay differs from the routine civil scenario where the time of trial is not affected by a statutory grant of freedom from the strain of litigation. The stay provision is designed to relieve pressure on the debtor by giving it breathing room to organize its affairs free from litigation initiated to collect debts. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5840–41; H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S. Code Cong.

& Admin. News 5787, 6296–97. In addition to exposing the estate assets to foreclosure proceedings, a ruling which lifts the stay also impinges on the debtor's freedom from litigation harassment. This adverse effect cannot be remedied on appeal at the conclusion of the bankruptcy proceeding; by then, the injury will have been inflicted.

■ Given the unique characteristics of the automatic stay, together with the purely legal nature of the order challenged here, and the fact that no further work need be done by the district court on this phase, we conclude that the order meets the required indicia for finality. The fact that foreclosure proceedings are not pending does not remove this case from the general propositions we set forth in *Comer. See Penn Terra Ltd. v. Dep't of Envtl. Resources,* 733 F.2d 267, 271 n. 4 (3d Cir. 1984) (allowing appeal where order, "because of its nature, would otherwise evade effective review").

The government's reliance on *Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068 (3d Cir.1983), is misplaced. In that case, a third party—not the bankrupt—sought to invoke the stay. The provisions of 11 U.S. C. § 362(a) stay the commencement and continuation of actions *against the debtor,* 11 U.S.C. § 362(a)(1), (2), (6), (7), *against the property of the estate, id.* § 362(a)(2), (3), (4), (5), or actions before the United States Tax Court *concerning the debtor, id.* § 362(a)(8). The automatic stay provision is not designed to benefit third parties and, therefore, the considerations that justify appealability here were not present in *Gold* where jurisdiction was not established.

We caution, as we have on other occasions, that even in bankruptcy appeals the concept of finality is not open-ended. Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine

---

**2.** We recognized in both *West Electronics,* 852 F.2d at 81, and *Comer,* 716 F.2d at 174 n. 11, that an order denying relief from the automatic stay might, in some circumstances, be nonappealable. *See also* 1 Collier on Bankruptcy § 3.03[e], at 3–188 to –189 (L.King 15th ed.

1988) ("The circuit courts [sic] considering the issue have uniformly held that an order lifting the automatic stay is a final order.... On the other hand, the courts have had a more difficult time determining whether orders refusing to vacate the automatic stay are final.").

civil litigation. The Federal Rule of Civil Procedure 54(b) concept of multiple claims within a single adversary proceeding made a ruling as to one, but not all, claims non-appealable in *White Beauty View.* In *Jeannette Corp.*, an order finding a violation of Federal Rule of Civil Procedure 11, but which had not yet fixed the appropriate sanctions, was not final. Likewise not appealable was the order in *Brown* that established liability, but did not determine the amount of damages.

Thus, our cases demonstrate that only on those occasions where the order on appeal raises an issue peculiar to bankruptcy will we relax our usual rules of finality. Because we decide that the automatic stay challenge in this case contains that necessary bankruptcy element, we will exercise jurisdiction and proceed to the merits.

## II.

█ The automatic stay provision codified at section 362 of the Bankruptcy Code prohibits, inter alia, the commencement or continuation of a judicial or administrative proceeding against the debtor that could have been initiated before the petition was filed, or to recover on a claim that arose pre-bankruptcy. 11 U.S.C. § 362(a). In addition to providing the debtor with a "breathing spell," the stay is intended to replace an unfair race to the courthouse with an orderly liquidation procedure designed to treat all creditors equally. *See H & H Beverage Distributors v. Dep't of Revenue of the Commonwealth of Pennsylvania,* 850 F.2d 165, 166 (3d Cir.1988); *see also* S.Rep. No. 989, at 49, 54–55, 1978 U.S. Code Cong. & Admin. News at 5835, 5840–41; H.R.Rep. No. 595, at 340, 1978 U.S. Code Cong. & Admin. News at 6296–97.

Congress recognized, however, that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions. To combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers, among others, Congress enacted the police and regulatory power exception to the automatic stay. *See Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.,* 700 F.2d 1279, 1283 (9th Cir.1983).

The two pertinent subsections provide:

362(b) The filing of a [bankruptcy] petition ... does *not* operate as a stay—

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

11 U.S.C. § 362(b) (emphasis added). These provisions embody Congress' recognition that enforcement of the environmental protection laws merits a higher priority than the debtor's rights to a "cease fire" or the creditors' rights to an orderly administration of the estate. *See Penn Terra,* 733 F.2d at 278; Comment, *Automatic Stay: Section 362,* 3 Bankr.Devs.J. 181, 195 (1986); *see also United States v. ILCO, Inc.,* 48 B.R. 1016, 1023 (N.D.Ala.1985).

The United States concedes that it is not entitled to execute on any judgment it might obtain in these proceedings against Nicolet; section 362(b)(5) expressly states that enforcement of a money judgment does not fall within the police and regulatory exception to the automatic stay. *See Brock v. Morysville Body Works, Inc.,* 829 F.2d 383, 389 (3d Cir.1987). But the government contends that the litigation should be permitted to proceed to a trial so that damages, if due, may be fixed.

The government further submits that, because the complaint seeks not only costs already expended, but those to be expended in the future, the relief demanded is prospective—at least in part. We are not impressed with this argument because its basis appears speculative here. We will decide this case on the premise that only expenses for past activities are at issue.

Nicolet argues that the exemption for regulatory enforcement is intended to apply only to governmental actions seeking prospective relief, and not to suits demanding money damages for past violations. Nicolet maintains that the urgency inherent in cases directing polluters to desist from continuing their illegal activities is absent when a simple monetary judgment is sought. Thus, in appellant's view, any debt owed the United States for clean-up expenditures is materially indistinguishable from that due other creditors who are statutorily precluded from liquidating their claims.

Nicolet's arguments are rational and not at all inconsistent with the statutory text; yet its reasoning is also not compelled by the statute. The stay provisions are sufficiently imprecise that they can be read to intend either of the conflicting results asserted by the parties. Faced with two equally legitimate interpretations of the statutory language, we turn to the law's legislative history for guidance on Congressional intent. *See Train v. Colorado Pub. Interest Research Group, Inc.*, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976).

A reading of the legislative history clearly favors the government's position. The Senate and House Committee Reports use identical language in describing the intended effect of the police and regulatory exemption. The reports state that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such a law*, the action or proceeding is not stayed under the automatic stay." S.Rep. No. 989, at 52 (emphasis added), 1978 U.S. Code Cong. & Admin. News at 5838; H.R.Rep. No. 595, at 343 (emphasis added), 1978 U.S. Code Cong. & Admin. News at 6299.

The reports reiterate this same theme in discussing the enforcement provision in subsection (5): "Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the *entry* of a money judgment, but does not extend to permit enforcement of a money judgment." S.Rep. No. 989, at 52 (emphasis added), 1978 U.S. Code & Admin. News at 5838; H.R.Rep. No. 595, at 343 (emphasis added), 1978 U.S. Code Cong. & Admin. News at 6299.

We referred to these reports in *Penn Terra Ltd. v. Dep't of Envtl. Resources*, 733 F.2d 267, 272 (3d Cir.1984), in deciding whether an order compelling the clean-up of an environmental hazard constituted enforcement of a money judgment. We commented, "[a]s the legislative history explicitly notes, the mere *entry* of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to the government's police or regulatory powers." *Id.* at 275 (emphasis in original).

Our opinion in *Penn Terra* recognized that efforts to rectify harmful environmental sites are obvious exercises of the state's power to protect the health, safety, and welfare of the public. "Indeed, both the Senate and the House committee reports on the Bankruptcy Reform Act explicitly acknowledge environmental protection as a part of the State's police power." *Id.* at 274.

In the same vein, in *United States v. Wheeling–Pittsburgh Steel Corp.*, 818 F.2d 1077, 1086 (3d Cir.1987), we stated that the "same statutory construction is *a fortiori* applicable to EPA's regulatory actions to force compliance by a debtor with federal environmental laws." The Supreme Court also has emphasized the importance Congress attached to anti-pollution matters, enacting the exception to section 362 to free enforcement of environmental protection measures from the automatic stay.[3] *Midlantic Nat'l Bank v. New Jersey Dep't of*

---

3. For pertinent law review commentary, see Cosetti & Friedman, *Midlantic Nat'l Bank, Kovacs, & Penn Terra: The Bankruptcy Code and State Environmental Law—Perceived Conflicts and Options for the Trustee and State Environmental* Agencies, 7 J.L. & Com. 65 (1987); Note, *Clean-Up Orders and the Bankruptcy Code: An Exception to the Automatic Stay*, 59 St. John's L.Rev. 292 (1985); Note, *Automatic Stay: Section 362*, 3 Bankr. Devs.J. 181 (1986).

*Envtl. Protection,* 474 U.S. 494, 503–04, 106 S.Ct. 755, 760–61, 88 L.Ed.2d 859 (1986). *See also Commonwealth Oil Refining Co. v. EPA,* 805 F.2d 1175, 1184 (5th Cir.1986) (enforcement of environmental laws during pendency of automatic stay is not restricted to situations where "eminent and identifiable harm" to public safety or "urgent public necessity" is shown), *cert. denied,* — U.S. ——, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987).

The Bankruptcy Code does not set out criteria for determining when a regulatory agency is seeking the impermissible "enforcement of a money judgment," but we explained the concept in *Penn Terra.* There, we wrote that the "paradigm" for such a proceeding is where the plaintiff attempts to seize the debtor's property to satisfy the judgment. "It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5)." *Penn Terra,* 733 F.2d at 275.

By simply permitting the government's claim to be reduced to a judgment, no seizure of property takes place. Moreover, that Congress carefully made only enforcement of a money judgment subject to the automatic stay indicates strongly that mere entry of the judgment was not intended to be proscribed. This implication is entirely consistent with the legislative history to which we earlier referred.

Other courts of appeals have reached similar results in cases falling within the regulatory and police power category. In *EEOC v. Rath Packing Co.,* 787 F.2d 318 (8th Cir.), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986), the court held that the automatic stay provision did not bar the Equal Employment Opportunity Commission from maintaining suit for the entry of a money judgment for backpay in a Title VII action.

Similarly, in *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934 (6th Cir.1986), the court determined that an order by the National Labor Relations Board for back wages on an unfair labor practice challenge did not violate the stay. The court explained that "once proceedings are except-

ed from the stay by section 362(b)(4), courts have allowed governmental units to fix the amount of penalties, up to and including *entry* of a money judgment." *Id.* at 942–43 (emphasis in original). *See United States v. Mattiace Indus., Inc.,* 73 B.R. 816 (E.D.N.Y.1987); *United States v. Standard Metals Corp.,* 49 B.R. 623 (D.Colo. 1985). In each of these cases the relief sought was monetary rather than prospective; yet in each case the government regulatory agency was permitted to maintain its action up to the point of judgment.

Another factor is sometimes added to this calculus. In *Edward Cooper Painting,* the court discussed the pecuniary interest/public policy analysis used to gauge whether the NLRB's action was exempt from the automatic stay. The pecuniary purpose test asks whether the governmental proceeding relates principally to the protection of the government's pecuniary interest in the debtor's property, rather than to its public policy interest in the general safety and welfare. *See Edward Cooper Painting,* 804 F.2d at 942. In the former situation, the action is not exempt from the stay. Thus, the exemption in section 362(b)(4) did not apply to a governmental unit's suit for breach of contract in *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora,* 805 F.2d 440 (1st Cir.1986).

In pressing this lawsuit, the United States is not seeking redress for private wrongs or a remedy for a private contract breach. It is not suing in its role as a consuming participant in the national economy, *i.e.,* suing a negligent motorist for damage to a GSA van or a paperclip manufacturer for a defective order. *Cf. Mora,* 805 F.2d at 440. Rather, the government brought suit against Nicolet in compliance with its explicit mandate under CERCLA "to remove or arrange for the removal of ... [any] hazardous substance, pollutant, or contaminant." 42 U.S.C. § 9604(a). Congress explained that CERCLA authorizes the "appropriate environment response action to protect public health and the environment from the dangers posed by [hazardous] sites." H.R.Rep. No. 1016,

96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S. Code Cong. & Admin. News 6119.

The same statute that directs the government to abate hazardous sites also provides for the recovery of response costs from the responsible parties. "[T]he owner and operator of a ... facility ... shall be liable for ... all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan ...." 42 U.S.C. § 9607(a).

The recoupment mandate interjects a valuable deterrence element into the CERCLA scheme, ensuring that responsible parties will be held accountable for their environmental misdeeds. *See Mattiace Indus.*, 73 B.R. at 819. These considerations make it plain that the present action falls within the "related to police or regulatory powers" category detailed in *Penn Terra.* We are persuaded that the Environmental Protection Agency is acting in this suit pursuant to its regulatory authority. We find further that it was Congress' intent that proceedings such as this be exempt from the automatic stay up to and including entry of a monetary judgment. Accordingly, the district court did not err in lifting the stay.

### III.

Our holding that the district court properly removed the automatic stay and allowed this action to proceed makes moot the appeal of Turner & Newall. Because that appellant's only contention here was contingent on the stay's applicability to Nicolet, the basis for its objection is now of no moment.

The order of the district court will be affirmed.