**UNITED STATES of America, Plaintiff,**

**Allegheny County Health Department, Intervenor Plaintiff,**

**Group Against Smog and Pollution, Intervenor Plaintiff,**

**v.**

**LTV STEEL COMPANY, INC., Defendant.**

**No. Civ.A. 98–570.**

United States District Court, W.D. Pennsylvania.

Nov. 7, 2001.

Amy Reynolds Hay, United States Attorney's Office, Pittsburgh, PA, Louis J. Schiffer, United States Department of Justice, Environmental Defense Section, Washington DC, Lisa A. Cherup, United States Department of Justice, Environmental Enforcement Section, Washington, DC, James M. Baker, United States Environmental Protection Agency, Region III, Philadelphia, PA, for plaintiff.

Henry Miller, III, Allegheny County Health Department, Pittsburgh, PA, for Allegheny County Health Department.

Paul M. Pohl, John D. Goetz, Kevin P. Holewinski, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for defendant.

William V. Luneburg, University of Pittsburgh School of Law, Pittsburgh, PA, for Group Against Smog and Pollution.

William Roy Crum, Jr., Pittsburgh, PA, for Citizens Helping our Community, William D. Bellas, Frederick W. Crum, II, Gerald Thiry.

Eric A. Schaffer, Paul M. Singer, David Ziegler, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Official Committee of Unsecured Creditors of LTV Steel Company, Inc.

### MEMORANDUM ORDER

CINDRICH, District Judge.

The United States of America filed the instant civil action for penalties against defendant LTV Steel Company, Inc. ("LTV") for its alleged violations of certain Allegheny County Health Department ("ACHD") Rules and Regulations governing air emissions from coke oven batteries within Allegheny County. Pending before the court are several motions which we address below.

## I. Background

The facts as alleged in the complaint are as follows. LTV owns, and until February 28, 1998, operated, a coke production plant located in the Hazelwood Section of Pittsburgh, Pennsylvania (the "Pittsburgh Coke Works"). Air emissions from the Pittsburgh Coke Works were subject to Article XXI, Sections 2105.21(e) and 2105.21(f), and Article XX, Sections 520.F and 520.G of the ACHD Rules and Regulations. Article XXI governs emissions that occurred on or after July 12, 1996, and Article XX governs emissions that occurred before July 12, 1996.[1]

ACHD has been responsible at the local level for monitoring LTV's compliance with Sections 520 and 2105.21 at the Pittsburgh Coke Works, in coordination with the United States Environmental Protection Agency ("EPA"). Sections 520 and 2105.21 of the ACHD Rules and Regulations are part of Pennsylvania's State Implementation Plan (the "Pennsylvania SIP") which is a program designed to implement the Federal Clean Air Act (the "CAA"). *See* 40 C.F.R. Section 52.2020. Thus, Sections 520 and 2105.21 are federally enforceable under the CAA. 42 U.S.C. Sections 7413(a)(1) and (b)(1).

In the last quarter of 1994, ACHD inspectors detected a few pushing emissions

---

1. Section 520 was recodified at Section 2105.21. There are no substantive differences between the specific subsections at issue here: new Section 2105.21(e)(4) and old Section 520.F.2 (which limit emissions from pushing operations at coke oven batteries) and new Sections 2105.21(f)(3) and (4) and old Section 520.G.2 and 3 (which limit emissions from combustion stacks for coke oven batteries). New section 2105.21 became federally enforceable on July 12, 1996. Thus, new Sections 2105.21(e) and (f) apply to the alleged pushing and combustion stack violations that occurred on and after July 12, 1996 and old Sections 520.F and 520.G apply to violations that occurred before July 12, 1996.

violations. Such violations continued through 1995 and early 1996. In November 1996, EPA inspectors also observed numerous pushing emissions violations. In 1995, ACHD inspectors detected sporadic combustion stack emissions violations. In October and November 1996, EPA inspectors also observed combustion stack emissions violations.

EPA issued a Notice of Violation ("NOV") on March 6, 1997, informing LTV that it was in violation of Sections 520.F and 520.G. A revised NOV was issued by U.S. EPA on September 21, 1998, clarifying that the violations occurring before July 12, 1996 were governed by Sections 520.F and 520.G and that the violations on or after July 12, 1996 were governed by Sections 2105.21(e) and (f).

LTV permanently shut down all coke oven batteries at the Pittsburgh Coke Works on February 28, 1998. The United States commenced the instant suit under the CAA on March 25, 1998, to recover a civil penalty for the alleged air emission violations that occurred at the Pittsburgh Coke Works over the past few years.

On December 29, 2000, LTV, its parent company, and other related companies filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the Northern District of Ohio, Eastern Division. The bankruptcy cases are being jointly administered as *In re: The LTV Corporation, et al.,* No. 00-43866. LTV has taken the position that the bankruptcy automatic stay extends to the instant action. On January 8, 2001, the Official Committee of Unsecured Creditors of LTV TV (the "Committee") was appointed pursuant to Section 1102 of the Bankruptcy Code. The Committee has moved to intervene in the instant action seeking to be heard on all matters and issues raised in the case.

## II. *Outstanding Motions*

### A. *Committee's Motion to Intervene*

■ The Committee argues that it has a right to intervene in the instant action pursuant to Fed.R.Civ.P. 24(a)(1), which provides that "anyone shall be permitted to intervene in an action ... when a statute of the United States confers an unconditional right to intervene." The Committee contends that the statutory right to intervene in this case is conferred by Section 1109(b) of the Bankruptcy Code, 11 U.S.C. Section 1109(b), which states that "[a] party in interest, including ... a creditor's committee, ... may raise and may appear and be heard on any issue in a case **under this chapter.**" 11 U.S.C. Section 1109(b) (emphasis added).

The United States argues in response that Section 1109(b) does not provide the Committee with an unconditional right to intervene because the instant CAA enforcement action is not "a case under [Chapter 11]." The United States also argues that even if the Committee had a right to intervene such right would be limited by the countervailing statutory federal interest involved here of enforcing the CAA.

A plain reading of Section 1109(b) supports the United States' argument that such section does not provide the Committee with an unconditional right to intervene because this environmental action is not a case "under this chapter" as referenced therein. As the Court of Appeals recognized in *In re Marin Motor Oil, Inc.,* 689 F.2d 445, 449–50 (3d Cir.1982), "[t]he words 'this chapter' in section 1109(b) denote Chapter 11 of the Bankruptcy Code, the Chapter which deals specifically with reorganizations." *United States v. Nicolet, Inc.,* 84 B.R. 30, 31 (E.D.Pa.1988) ("*Nicolet II*"). In *Nicolet II*, therefore, a case involving a suit brought by the United

States under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Section 9607(a), to recover certain response costs, the court held that a bankruptcy creditors committee did not have a right of intervention under Rule 24(a)(1). *Id.* The court explained that "[t]he litigation presently pending before this Court is not a case 'under' Chapter 11 of the Code, but, rather, involves a CERCLA claim which . . . is exempt from the stay provisions of the Bankruptcy Code." *Id.* (citation omitted). This CAA claim, like the CERCLA action in *Nicolet II,* is not a case under Chapter 11.

We also note that the Court of Appeals more recently stated, albeit in dicta, that the district court's decision in *Nicolet II* "suggests that the right to intervene under Section 1109(b) will not turn on whether a case is 'related to' or 'under' Chapter 11, but on whether there is an independent federal right which overrides the interests of creditors to intervene." *Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1241 n. 21 (3d Cir.1994). The Court of Appeals explained that "[s]uch an overriding federal interest existed in *Nicolet II* because . . . enforcement of the environmental laws merits a higher priority than the debtor's rights to a 'cease fire' or the creditors rights to an orderly administration of the estate." *Id.* (citation omitted).

This case, like *Nicolet II,* involves the enforcement of environmental laws.[2] Thus, we also agree with the United States' alternative argument that the Committee does not have an unconditional right to intervene under Section 1109(b) because this case involves an independent federal right which overrides the interests of the Committee.

■ Accordingly, we find that the Committee does not have a right to intervene pursuant to Fed.R.Civ.P. 24(a)(1), and therefore will deny its motion.[3]

### B. *United States' Motion for Declaration of Inapplicability of Bankruptcy Stay*

■ The United States filed the instant action seeking the calculation of a penalty against LTV for violations of the CAA and the entry of a judgment for such amount. Once a judgment is obtained, the United States recognizes that it must collect on that judgment by filing a proof of claim in LTV's bankruptcy case. The United States moves for a court declaration that the case is not stayed by operation of the automatic stay imposed by the Bankruptcy Code, 11 U.S.C. Section 362. The United States contends that seeking the entry of a civil penalties judgment is an exercise of the government's police and regulatory

---

2. As discussed *infra,* this is an enforcement action even though the only relief being sought is the imposition of civil penalties for past violations.

3. The United States also contends that the Committee cannot intervene under either Fed.R.Civ.P. 24(a)(2) or 24(b). Even though the Committee did not move to intervene under either rule, it appears that the United States is correct. The Committee cannot satisfy the fourth required factor for intervention under Rule 24(a)(2), that the Committee's interest not be adequately represented by an existing party in the litigation, as LTV has mounted a vigorous defense to this action. *See Nicolet II,* 84 B.R. at 31.

Permissive intervention may be granted pursuant to Rule 24(b) when either (1) a federal statute provides a conditional right to intervene; or (2) a movant's claim or defense and the main action have a question of law or fact in common. Fed.R.Civ.P. 24(b). Neither situation applies here. The only statutory right cited by the Committee is Section 1109(b) which we have already held does not provide it with a right to intervene. Also, there is no question of law or fact here that is in common with LTV's bankruptcy case.

powers to protect human health and the environment, and therefore falls under the "police powers exception" to the automatic stay as set forth at 11 U.S.C. Section 362(b)(4).

LTV argues in response that the police powers exception does not apply here where the government is only seeking civil penalties for past violations at a closed facility. LTV maintains that the exception only applies in cases where the government is seeking injunctive relief to prevent or stop a violation or to recover monies to remedy harm caused by a violation.[4]

Section 362(a)(1) provides that:

Except as provided in subsection (b) of this section, a petition filed under ... this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. Section 362(a)(1). Subsection (b) of Section 362 provides that:

The filing of a [bankruptcy] petition ... does not operate as a stay—

(4) under paragraph (1) ... of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power.

11 U.S.C. Section 362(b).[5] "Congress recognized ... that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions. To combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers ... Congress enacted the police and regulatory power exception to the automatic stay [at Section 362(b)(4) ]." *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir.1988) ("*Nicolet I* ") (citation omitted).

LTV cites no cases which supports its narrow interpretation of the police powers exception, relying instead on a tedious recitation of insignificant factual distinctions between the instant case and the relevant case law and a flawed legislative history analysis. As we explain below, the statutory language and case law support the United States' position that the police powers exception applies in this case.

We consider first the relevant statutory language.

Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with [the] plain language of the statute itself. Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the

---

**4.** The parties do not dispute that this court has jurisdiction to determine whether the bankruptcy automatic stay applies. *See Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir.1987).

**5.** Section 362(b)(4) was amended in 1998 to combine former Sections 362(b)(4) and (5)

with no significant change in the combined language of the police powers exception. Thus, case law interpreting the police powers exception prior to the 1998 amendment still applies. *See In re Mohawk Greenfield Motel Corp.*, 239 B.R. 1, 6 n. 6 (Bankr.D.Mass. 1999).

language produces an absurd result. Moreover, a court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history.

*Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir.1998) (citations omitted).

■■■ Section 362(b)(4) exempts from the bankruptcy stay the "continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment...." 11 U.S.C. Section 362(b)(4). In language that is clear and unambiguous, therefore, Section 362(b)(4) only limits the government's police and regulatory power to *enforce* a money judgment outside of the bankruptcy. The government's power to seek *entry* of a civil penalty judgment for violations of the environmental laws is not precluded. *Nicolet I*, 857 F.2d at 209 ("[T]hat Congress carefully made only enforcement of a money judgment subject to the automatic stay indicates strongly that mere entry of the judgment was not intended to be proscribed.") Indeed, the government's ability to seek civil penalties to punish those companies that violate the CAA is one of the primary regulatory enforcement tools Congress included in the legislation[6] and falls squarely within the ordinary meaning of "police and regulatory power."[7]

■■■ Although further inquiry is not needed, as a plain reading of Section 362(b)(4)'s language does not produce an absurd result, we note that the instant action also fits within the police powers exception as defined by the pecuniary interest/public policy test. *See Berg v. Good Samaritan Hospital*, 230 F.3d 1165, 1167 (9th Cir.2000); *Nicolet I*, 857 F.2d at 209. Courts sometimes consider this test when determining whether a particular government action falls under the police powers exception. *Id.* The court "asks whether the governmental proceeding relates principally to the protection of the government's pecuniary interest in the debtor's property, rather than to its public policy interest in the general safety and welfare. In the former situation, the action is not exempt from the stay." *Nicolet I*, 857 F.2d at 209; *see Berg*, 230 F.3d at 1167.

When applying the test in *Nicolet I*, the Court of Appeals stated:

In pressing this lawsuit, the United States is not seeking redress for private wrongs or a remedy for a private contract breach. It is not suing in its role as a consuming participant in the national economy, i.e., suing a negligent motorist for damage to a GSA van or a paperclip manufacturer for a defective order. Rather, the government brought suit against Nicolet in compliance with its explicit mandate under [the Comprehensive, Environmental Response, Compensation and Liability Act ("CERCLA") ] 'to remove or arrange for the removal of ... [any] hazardous substance, pollutant, or contaminant.' 42 U.S.C. Section

---

**6.** *See United States v. Sugarhouse Realty, Inc.,* 162 B.R. 113, 116 (E.D.Pa.1993) (The Court of Appeals recognized in *Penn Terra Ltd. v. Department of Environmental Resources,* 733 F.2d 267 (3d Cir.1984) "that civil penalties, insofar as they tend to force compliance, play an integral role in environmental enforcement actions.")

**7.** *See,* Black's Law Dictionary 246 (6th ed. 1992) (Civil penalties "[r]epresents punishment for specific activities; e.g. violation of antitrust or securities laws, usually in the form of fines or money damages.")

9604(a).... The same statute that directs the government to abate hazardous sites also provides for the recovery of response costs from the responsible parties. The recoupment mandate interjects a valuable deterrence element into the CERCLA scheme, ensuring that responsible parties will be held accountable for their environmental misdeeds. These considerations make it plain that the present action falls within the [police powers exception].... We are persuaded that the Environmental Protection Agency is acting in this suit pursuant to its regulatory authority. We find further that it was Congress' intent that proceedings such as this be exempt from the automatic stay up to and including entry of a monetary judgment.

857 F.2d at 209 (citations omitted).

This reasoning applies equally here. The United States is not suing LTV seeking redress for a private wrong.[8] Rather, the United States is seeking the imposition of civil penalties for allegedly significant violations of the CAA, which was enacted "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. Section 7401(b)(1). To fulfill this purpose, Congress delegated to the EPA the authority "to commence a civil action for a permanent or temporary injunction *or to assess and recover a civil penalty* ... (1) *Whenever such person has violated* or is in violation of, any requirement or prohibition of an applicable [state] implementation plan...." 42 U.S.C. Section 7413(b) (emphasis added). Like CERCLA'S recoupment mandate, the threat of civil penalties is a valuable deterrent element of the CAA.[9]

---

**8.** LTV attempts to distinguish *Nicolet I* noting that the money judgment sought in that case was for remedial costs that would be redeposited into the Hazardous Substance Trust Fund ("Superfund") which was established under CERCLA to pay for response costs at hazardous sites throughout the country. Civil penalties under the CAA, on the other hand, are paid into the United States Treasury and are not earmarked for any specific purpose. LTV maintains, therefore, that the CERCLA claim in *Nicolet I*, as opposed to the CAA civil penalty at issue here, has an equitable or compensatory aspect to it that fits within the police powers exception.

This distinction does not alter our determination that *Nicolet I* supports and directs a finding that this case falls under the police powers exception to the automatic stay. LTV's reasoning does not appear in *Nicolet I*, nor in any of the relevant case law. As we have already indicated, the civil penalties provision of the CAA is a primary regulatory tool which serves as an important deterrent to would-be violators of the Act. Any pecuniary benefit accruing to the government is of secondary importance to this regulatory interest. *See Berg*, 230 F.3d at 1168 ("[A]lthough private parties may benefit financially from sanctions, the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests." (citation omitted)). Indeed, under LTV's reasoning there would be little incentive for companies "teetering on the edge of the bankruptcy abyss" to comply with the CAA as even the calculation of a civil penalty could be avoided with the filing of a bankruptcy petition. *See Berg*, 230 F.3d at 1168. We note that LTV also overlooks the fact that the court has discretion to designate a portion of any civil fines recovered under the CAA to "be used in beneficial mitigation projects which are consistent with [the CAA] and enhance the public health or the environment." 42 U.S.C. Section 7604(g)(2).

**9.** LTV contends that the assessment of a civil penalty in this case would not have a deterrent effect given that the facility at issue has been closed. We disagree. The deterrent effect of civil penalties is not directed at one particular facility but to the operating company as a whole and all other companies whose operations are covered by the CAA. A civil penalty is particularly important in this case, for example, as LTV still operates several coke and steel manufacturing facilities throughout the country.

Finally, LTV would have us depart from the plain language of Section 362(b)(4) by adding language to the effect that the exception to the automatic stay only applies to cases where the government is seeking injunctive relief or to recover monies to remedy harm cause by a violation. LTV contends that evidence of such Congressional intent appears in the legislative history which LTV quotes as stating that "only those actions by a 'governmental unit ... *to prevent or stop [a] violation of* fraud, *environmental protection,* ... or attempting to fix damages for violation of such law' are exempt from the stay." LTV's Br. pp. 5–6 (citing S.Rep. No. 989, 95th Cong., 2d Sess. at 52 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5838; H.R.Rep. No. 595, 95th Cong., 1st Sess. at 343 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6299 (emphasis added by LTV)).

The United States correctly notes that LTV added the words "only those actions" before the actual legislative history quote.

Neither the Senate nor the House Report used the word "only." The reports used instead the word "Thus," indicating that the immediately following list of cases was an example of the types of cases that would fall within the exception. The mere mention of environmental laws and generic reference to "damages" in these reports does not indicate an intent to limit the stay exception to only those cases where injunctive relief or remedial monies is being sought. These reports most certainly do not amount to an extraordinary showing of Congress' intent to create such a limitation.[10]

Accordingly, we find that based on a plain reading of Section 362(b), the instant action is exempted from the bankruptcy automatic stay.

The relevant case law further supports our reading of Section 362(b)(4). The leading Court of Appeals for the Third Circuit case that deals with the bankruptcy automatic stay in the context of an environmental case is *Nicolet I.*[11] As previ-

---

**10.** In *Nicolet I*, the court found that Section 362(b)'s language was not plain and unambiguous with regard to the government's action to recover remedial costs. The court interpreted the government's request as one for damages which is not specifically mentioned in Section 362(b). Thus, the court looked to the legislative history for guidance noting that "damages" for violations was specifically referenced therein as being part of Section 362(b)'s exception to the automatic stay. The court's finding that Section 362(b) was not plain and unambiguous as to "damages" is not inconsistent with our finding that Section 362(b)'s language is clear and unambiguous as it relates to the government's ability to seek civil penalties for CAA violations. As we have already indicated, the government's ability to seek civil penalties to punish companies that violate the CAA falls squarely within the ordinary meaning of police and regulatory power.

**11.** Citing *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383 (3d Cir.1987), LTV states in its brief that the Section 362(b) "exemption

only applies to equitable actions that seek to abate violations or conditions or that seek relief that is remedial in nature." LTV's Br. (Doc. No. 136) p. 6. LTV's characterization of the Court of Appeals holding in *Brock* is incorrect. The Court of Appeals did not hold in *Brock* that the police powers exception only applies in these narrow set of circumstances. In *Brock*, the Secretary of Labor had issued a citation to Morysville Body Works for several violations of the Occupational Safety and Health Act ("OSHA"). The citation required Morysville to abate the violations and also assessed a penalty of $21,000. Morysville did not contest the citation within fifteen working days after it was issued, therefore, the citation became a final order of the Occupational Safety and Health Review Commission that was not reviewable by any court or agency. The Secretary was petitioning the court for summary *enforcement* of the final order. *Id.* at 386. Citing legislative history, the court noted that "[a]lthough Congress was clear in exempting abatement actions from the automatic stay, it plainly drew the line at enforce-

ously noted, *Nicolet I* was a suit brought by the United States pursuant to CERCLA to recover the money that the government had expended to cleanup the defendant's asbestos site. The Court of Appeals held that such suit fell under the government's police and regulatory power and was therefore excepted from the automatic stay. *See Sugarhouse Realty*, 162 B.R. 113 (relying on *Nicolet I*, court ruled that government's motion for entry of judgment for civil penalties in CERCLA action was exempt from stay under Section 362(b)).

The *Nicolet I* holding is consistent with the Court of Appeals' prior discussion in *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3d Cir.1984), a case brought by the Commonwealth of Pennsylvania to force the defendant's compliance with certain state environmental laws. The defendant had recently filed a Chapter 7 bankruptcy and argued that the automatic stay applied to the State's suit. The court held that the State was acting under its police and regulatory power, and therefore the action was exempt from the automatic stay. Although the case was one that primarily involved injunctive relief, the court commented that:

> We also acknowledge that exercise of a State's police powers may, depending on the circumstances, take the form of an

execution on a money judgment. For example, if a coal mining company conducted operations in violation of applicable surface reclamation laws, then the assessment and collection of a civil penalty to serve as punishment and deterrence against future violations would be no less an exercise of the police power than if the State had ordered the company to cease operations entirely.

*Id.* at 274 n. 7.

The Court Appeals for the Sixth Circuit, the controlling court for the state where LTV's bankruptcy action is pending, has also held that actions such as the instant one fall under the police powers exception. In *In re Commerce Oil Co.*, 847 F.2d 291 (6th Cir.1988), the State of Tennessee filed an action against Commerce Oil for certain state environmental laws. The State sought injunctive relief, penalties for past violations and damages. Shortly thereafter, Commerce Oil filed for bankruptcy under Chapter 11 and argued that the State's attempts to recover a civil penalty and damages for past conduct did not fall under the police powers exception. The Court held, however, that the State's attempt to fix civil liability was "a regulatory action in the purest sense." *Id.* at 296. The court further noted:

> we decline to adopt Commerce's premise that preservation of the debtor's estate is of greater priority in the statutory

ment of money judgments." *Id.* at 389. The court ultimately held that it was "deny[ing] the Secretary's petition insofar as it seeks to enforce the *payment* of a $21,000 penalty." Id. at 390 (emphasis added). Although in some parts of the court's discussion the term "entry" of judgment instead of "enforcement" is used, it is clear that the issue before the court was whether the automatic stay precluded enforcement of a judgment as opposed to the calculation of penalties and "entry" of a judgment, which is what the United States seeks here. The court was plainly aware of this distinction surmising as follows:

Thus, although the stay does not operate against actions or proceedings by governmental units "attempting to fix damages for violation of such a [health and safety] law," it does prevent a governmental unit from enforcing a money judgment. The Secretary is not before us to fix the amount of damages owed by Morysville ..., a final determination of that issue has been made. Rather, he in part seeks summary enforcement of a money judgment.... The automatic stay clearly prevents us from enforcing this portion of the citation. *Id.* at 389.

scheme set forth by Congress in Title 11 than is the enforcement of environmental protection laws explicitly intended to be excepted from the automatic stay. The plain meaning, the structure and the policy behind Section 362(b) all indicate otherwise.

*Id.* at 297.

Cases interpreting the police powers exception in relation to other public safety laws is also instructive. As the United States correctly notes, in other areas of the law such as labor, immigration, consumer protection, and attorney discipline courts have repeatedly held that a bankruptcy filing does not stay actions where the imposition of civil penalties for past conduct is being sought. *See Alpern v. Lieb,* 11 F.3d 689, 690 (7th Cir.1993) (C.J. Posner, "The fact that a sanction is entirely pecuniary does not take it out of section 362(b)(4). A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigating by firms or individuals teetering on the edge of the bankruptcy abyss." (citation omitted)); *In re Gerald Nelson,* 240 B.R. 802 (Bankr. D.Maine 1999) (action to recover civil penalties for violation of consumer protection laws falls under the police powers exception); *In re Crockett,* 204 B.R. 705 (Bankr. W.D.Tex.1997) (action for review of civil penalties for Chapter 11 debtor's pre-petition violations of the Fair Labor Standards Act falls under the police powers exception); *U.S. v. Armory Hotel Assocs.,* 93 B.R. 1 (D.Maine 1988) (action to assess civil penalty for bankruptcy debtor's failure to verify the status of employees falls under the Immigration and Naturalization Service's police powers); *In re Perez,* 61 B.R. 367 (Bankr.E.D.Cal.1986) (action to fix civil penalty for bankruptcy debtor's

violations of the Migrant and Seasonal Agricultural Worker Protection Act falls under the police powers exception). In sum, the case law supports our finding that the instant case, in which civil penalties for past violations is the only relief being sought, fits within the police powers exception to the bankruptcy automatic stay.

Accordingly, the United States motion for a court declaration that the instant action is not stayed by operation of the automatic stay imposed by the Bankruptcy Code, 11 U.S.C. Section 362, will be granted.

### C. *GASP's Status*

■ LTV argues that GASP should be dismissed from the action because the police powers exception only applies to governmental entities.

As was set forth in the court's December 31, 1998 memorandum order granting GASP's motion to intervene, GASP is an intervenor of right pursuant to Fed. R.Civ.P. 24(a)(1) and 42 U.S.C. Section 7604(b)(1)(B) and has been granted various participatory rights in this proceeding. GASP currently has no independent claim and has not commenced any action as referred to in Section 362(a). Moreover, GASP's limited participation cannot increase LTV's potential liability. Accordingly, LTV's request to dismiss GASP from the action is denied.

### D. *United States' Motion to Modify Case Management Order*

The United States filed a motion to modify the current case management order to allow for certain discovery during the pendency of the bankruptcy stay issue. This motion will be denied, the court having now ruled on the issue. A status conference will be scheduled at which the court will set a discovery schedule after consultation with counsel.

In accordance with the foregoing, **IT IS HEREBY ORDERED** that:

—The Creditor's Motion to Intervene (Doc. No. 138) is **DENIED.**

—The U.S. EPA's Motion for Declaration of Inapplicability of Bankruptcy Stay (Doc. No. 131) is **GRANTED.** Accordingly, the court finds that the instant CAA enforcement action falls under the police powers exception of Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. Section 362(b)(4), and that the bankruptcy automatic stay does not stay this action.

—The U.S. EPA's Motion to Modify the Case Management Order (Doc. No. 143) is **DENIED.**

A status conference shall be held on December 4, 2001 at 4:30 p.m., Room 1014, United States Post Office and Courthouse, Seventh Avenue and Grant Street, Pittsburgh, Pennsylvania. Before that date, all counsel will meet and confer on an appropriate discovery order to be presented to the court.