**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),
>               *Plaintiff-Appellant,*

and

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and
advisor for secured creditors,
>           *Intervenors/Plaintiffs,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,
>               *Amicus Curiae,*                   No. 00-2170

v.

BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,
>           *Defendants-Appellees,*

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE); SOUTH CAROLINA
DEPARTMENT OF NATURAL
RESOURCES; SOUTH CAROLINA PUBLIC
SERVICE AUTHORITY,
    *Intervenors/Defendants-Appellees,*

and

STATE OF SOUTH CAROLINA,
                    *Defendant.*

UNITED STATES OF AMERICA,
                    *Amicus Curiae.*

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),
                    *Plaintiff-Appellee,*

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and
advisor for secured creditors,
    *Intervenors/Plaintiffs-Appellees,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,
                    *Amicus Curiae,*

v.

No. 00-2179

BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,
                *Defendants-Appellants,*

and

STATE OF SOUTH CAROLINA,
                *Defendant,*

and

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE); SOUTH CAROLINA
DEPARTMENT OF NATURAL
RESOURCES; SOUTH CAROLINA PUBLIC
SERVICE AUTHORITY,
                *Intervenors/Defendants,*

UNITED STATES OF AMERICA,
                *Amicus Curiae.*

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),

*Plaintiff-Appellee,*

and

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and
advisor for secured creditors,

*Intervenors/Plaintiffs,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,

*Amicus Curiae,*                         No. 00-2180

v.

STATE OF SOUTH CAROLINA;
BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,

*Defendants,*

and

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE); SOUTH CAROLINA
DEPARTMENT OF NATURAL
RESOURCES,
                    *Intervenors/Defendants,*

                    and

SOUTH CAROLINA PUBLIC SERVICE
AUTHORITY,
            *Intervenor/Defendant-Appellant,*

UNITED STATES OF AMERICA,
                            *Amicus Curiae.*

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),
                    *Plaintiff-Appellee,*

                    and

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and
advisor for secured creditors,
                    *Intervenors/Plaintiffs,*

                    and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,
                    *Amicus Curiae,*

                    v.

No. 00-2181

STATE OF SOUTH CAROLINA;
BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,
                              *Defendants,*

SOUTH CAROLINA DEPARTMENT OF
NATURAL RESOURCES; SOUTH
CAROLINA PUBLIC SERVICE
AUTHORITY,
                *Intervenors/Defendants,*

                      and

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE),
  *Intervenors/Defendants-Appellants.*

UNITED STATES OF AMERICA,
                        *Amicus Curiae.*

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),

*Plaintiff-Appellee,*

and

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and
advisor for secured creditors,

*Intervenors/Plaintiffs,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,

*Amicus Curiae,*

v.

STATE OF SOUTH CAROLINA;
BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,

*Defendants,*

and

No. 00-2182

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE); SOUTH CAROLINA PUBLIC
SERVICE AUTHORITY,
          *Intervenors/Defendants,*

              and

SOUTH CAROLINA DEPARTMENT OF
NATURAL RESOURCES,
       *Intervenor/Defendant-Appellant.*

UNITED STATES OF AMERICA,
              *Amicus Curiae.*

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),

                  *Plaintiff,*

          and

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and                No. 00-2213
advisor for secured creditors,
     *Intervenors/Plaintiffs-Appellants,*

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,
              *Amicus Curiae,*

              v.

BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,
                *Defendants-Appellees,*

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE); SOUTH CAROLINA
DEPARTMENT OF NATURAL
RESOURCES; SOUTH CAROLINA PUBLIC
SERVICE AUTHORITY,
    *Intervenors/Defendants-Appellees,*

and

STATE OF SOUTH CAROLINA,
                *Defendant.*

UNITED STATES OF AMERICA,
                *Amicus Curiae.*

SAFETY-KLEEN, INCORPORATED
(PINEWOOD),
                              *Plaintiff,*

TORONTO DOMINION (TEXAS),
INCORPORATED, As agent and advisor
for secured creditors; TD SECURITIES
(USA), INCORPORATED, As agent and
advisor for secured creditors,
                    *Intervenors/Plaintiffs,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SAFETY KLEEN
CORPORATION,
                    *Amicus Curiae-Appellant,*          No. 00-2214

v.

BRADFORD W. WYCHE, Chairman,
South Carolina Board of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
BOARD OF HEALTH AND
ENVIRONMENTAL CONTROL; DOUGLAS
E. BRYANT, Commissioner, South
Carolina Department of Health and
Environmental Control, in his
official capacity; SOUTH CAROLINA
DEPARTMENT OF HEALTH AND
ENVIRONMENTAL CONTROL,
                    *Defendants-Appellees,*

SIERRA CLUB; PHIL P. LEVENTIS;
CITIZENS ASKING FOR A SAFE
ENVIRONMENT, INCORPORATED
(CASE); SOUTH CAROLINA
DEPARTMENT OF NATURAL
RESOURCES; SOUTH CAROLINA PUBLIC
SERVICE AUTHORITY,
 *Intervenors/Defendants-Appellees,*

and

STATE OF SOUTH CAROLINA,
       *Defendant.*

UNITED STATES OF AMERICA,
      *Amicus Curiae.*

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-00-2243-3-10)

Argued: December 8, 2000

Decided: December 19, 2001

Before WIDENER, LUTTIG, and MICHAEL, Circuit Judges.

---

Affirmed in part, reversed in part, and dismissed in part by published opinion. Judge Michael wrote the opinion, in which Judge Widener joined and in which Judge Luttig joined except for part III.A. Judge Widener wrote a concurring opinion, and Judge Luttig wrote a concurring opinion.

---

## COUNSEL

**ARGUED:** Stuart Henry Newberger, CROWELL & MORING, L.L.P., Washington, D.C.; Richard Chase Tufaro, MILBANK,

TWEED, HADLEY & MCCLOY, L.L.P., Washington, D.C., for Appellants. Benjamin A. Hagood, Jr., CRAVER, HAGOOD & KERR, Charleston, South Carolina; James Stuart Chandler, Jr., Georgetown, South Carolina, for Appellees. **ON BRIEF:** Clifton S. Elgarten, Ellen B. Steen, Aryeh S. Portnoy, Adam Gajadharsingh, CROWELL & MORING, L.L.P., Washington, D.C.; Henry H. Taylor, Vice President and General Counsel, SAFETY-KLEEN CORPORATION, Columbia, South Carolina; David Kurtz, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, L.L.P., Chicago, Illinois; Harvey R. Miller, David R. Berz, John J. Rapisardi, WEIL, GOTSHAL & MANGES, L.L.P., New York, New York; Thomas S. Tisdale, Stephen L. Brown, YOUNG, CLEMENT, RIVERS & TISDALE, L.L.P., Charleston, South Carolina; Luc A. Despins, MILBANK, TWEED, HADLEY & MCCLOY, L.L.P., Washington, D.C., for Appellants. Robert A. Kerr, Jr., Wendy L. Wilkie, CRAVER, HAGOOD & KERR, Charleston, South Carolina; Carlisle Roberts, Jr., Jacquelyn S. Dickman, E. Katherine Wells, Office of General Counsel, SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Columbia, South Carolina, for Appellees. Lois J. Schiffer, Assistant Attorney General, John A. Bryson, Alan S. Tenenbaum, Randall M. Stone, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Nina Rivera, Christine McCullouch, ENVIRONMENTAL PROTECTION AGENCY, Washington, D.C., for Amicus Curiae United States.

---

**OPINION**

MICHAEL, Circuit Judge:

Safety-Kleen, Inc., a Chapter 11 debtor, filed this adversary proceeding against the South Carolina Department of Health and Environmental Control (DHEC) in an effort to prevent the agency from closing Safety-Kleen's Pinewood facility, a commercial hazardous waste landfill. Safety-Kleen appeals the district court's order denying the company a preliminary injunction to enjoin DHEC from closing the Pinewood facility. DHEC, in turn, cross-appeals the district court's determinations (1) that the *Rooker-Feldman* doctrine does not bar Safety-Kleen's action and (2) that the automatic stay blocks

DHEC's attempt to require Safety-Kleen to comply with state financial assurance regulations. DHEC also attempts to take an interlocutory appeal from the district court's order denying its motion to dismiss Safety-Kleen's complaint. Finally, the Official Committee of Unsecured Creditors of Safety-Kleen ("Official Committee") appeals the denial of its motion to intervene. We hold that (1) *Rooker-Feldman* does not bar Safety-Kleen's action; (2) the district court did not err in denying Safety-Kleen's motion for a preliminary injunction; (3) the automatic stay does not apply to DHEC's efforts to enforce the financial assurance requirements; (4) DHEC may not appeal the denial of its motion to dismiss; and (5) the Official Committee's motion to intervene should have been allowed. As a result, we affirm in part, reverse in part, and dismiss in part.

## I.

Safety-Kleen operates the Pinewood facility, one of only twenty commercial hazardous waste landfills in the country. Pinewood is located in Sumter County, South Carolina, and is within 1200 feet of Lake Marion, a popular recreation spot and a source of drinking water for several thousand people. Pinewood began accepting hazardous waste in 1978 and operated under a permit issued by DHEC. DHEC issued the original permit without providing public notice or a hearing. After Congress passed the Resource Conservation and Recovery Act (RCRA), Pub. L. No. 94-580, 90 Stat. 2795 (1976) (codified as amended at 42 U.S.C. §§ 6901-6992k), Safety-Kleen was required to apply for a new hazardous waste permit from DHEC. Under RCRA Pinewood qualified for "interim status," which allowed Pinewood to remain open pending DHEC's determination of whether to award Safety-Kleen a final permit.

DHEC scheduled a public hearing and solicited comments on whether and under what conditions Safety-Kleen was entitled to a final permit to operate Pinewood. In July 1989 DHEC staff, in consultation with the EPA, issued a final permit to Safety-Kleen to operate Pinewood. The permit provided that Pinewood had a capacity limit of 2250 acre-feet[1] of waste, but it did not specify whether nonhazardous

---

[1] An acre-foot is the volume of water necessary to cover one acre to a depth of one foot. It is equal to 43,560 cubic feet or 325,851 gallons.

waste counted toward the capacity limit. Safety-Kleen objected to some of the permit's conditions and requested a hearing with a DHEC hearing officer.[2] Several environmental groups also requested a hearing to challenge the issuance of a final permit. Before the hearing Safety-Kleen and DHEC agreed to resolve their differences over the permit terms by entering into a stipulated agreement. The agreement contained two important provisions. First, Pinewood could store up to 2461 acre-feet of nonhazardous waste in addition to 2250 acre-feet of hazardous waste. Second, Safety-Kleen agreed not to apply for additional landfill space until Pinewood was within three years of reaching its capacity. The agreement, however, was not binding on either the hearing officer or the DHEC Board.

The DHEC hearing officer recommended approval of the agency's decision to issue the final permit as modified by the stipulated agreement. The environmental groups asked the DHEC Board to review the hearing officer's recommendation. The Board upheld the issuance of the final permit but rejected the stipulated agreement's separate allowance for nonhazardous waste. In other words, the Board concluded that Pinewood's capacity should be limited to a total of 2250 acre-feet of total waste, whether hazardous or nonhazardous. The Board's decision, however, was prospective only. Therefore, any nonhazardous waste stored in Pinewood prior to the Board's decision would not be counted against the cap. While Safety-Kleen was not pleased with the Board's decision to reject the separate cap for nonhazardous waste, Safety-Kleen estimated that Pinewood would have between four and one-half to six years of unused space left under the permit.

Both Safety-Kleen and the environmental groups petitioned the Sumter County Court of Common Pleas for judicial review of the Board's decision. Safety-Kleen sought reversal of the Board's deci-

---

[2]Waste operators and other interested persons dissatisfied with DHEC's permit decisions may seek an adjudicatory hearing before a hearing officer. *See* 25 S.C. Code Ann. Regs. 61-72 Part II. Parties may seek review of the hearing officer's recommendation by the DHEC Board. *See id.* Part VIII. The Board consists of seven members who are appointed by the Governor with the advice and consent of the state Senate.

sion to reject the separate cap for nonhazardous waste, and the environmental groups challenged the issuance of the permit for Pinewood. The Court of Common Pleas denied each of the petitions for review, and both sides then appealed to the South Carolina Court of Appeals. The Court of Appeals upheld the Board's decision, but with one significant change. *See Leventis v. S.C. DHEC*, 530 S.E.2d 643 (S.C. Ct. App. 2000). The court concluded that the rejection of the separate cap for nonhazardous waste would operate retrospectively as well as prospectively. *See id.* at 660. In other words, any nonhazardous waste stored in Pinewood before the Board's decision would count against the total cap. *See id.* As a result of this decision, Pinewood became immediately full under the permit. Specifically, the combination of the existing nonhazardous and hazardous waste stored at Pinewood exceeded the 2250 acre-feet cap. The Court of Appeals' decision had dramatic consequences for Safety-Kleen. The instant before the decision, Pinewood had a substantial amount of unfilled space, and Safety-Kleen was barred by the stipulated agreement from seeking additional space. The instant after the decision, Pinewood suddenly had no more permitted space. Safety-Kleen promptly petitioned for a writ of certiorari to the South Carolina Supreme Court.

While the petition for certiorari was pending, Safety-Kleen encountered another serious problem, this one relating to the bonds posted by the company to secure certain facility-related obligations. On June 1, 2000, the U.S. Treasury removed Frontier Insurance Company from its list of approved sureties. Frontier was the issuer of the bonds posted by Safety-Kleen to secure the costs associated with Pinewood's closure and post-closure maintenance. Safety-Kleen's permit and state law require that the surety company issuing the required bonds be among those listed as acceptable by the Treasury. On June 9 DHEC ordered Safety-Kleen to acquire substitute bonds within 18 days or cease accepting waste (the "bond order"). Safety-Kleen did not have the financial ability to comply with DHEC's order, and later that day the company filed for Chapter 11 bankruptcy in the District of Delaware.

Four days later, on June 13, the South Carolina Supreme Court denied Safety Kleen's petition for a writ of certiorari to review the Court of Appeals' decision. The next day DHEC ordered Pinewood to cease accepting waste within 30 days because Pinewood had

exhausted all of its permitted space under its existing permit (the "closure order"). Safety-Kleen responded by seeking additional capacity on both a temporary and a permanent basis. DHEC denied the request for temporary authorization to store additional waste. Safety-Kleen's request for permanent authorization is currently pending with DHEC.

On July 7, 2000, Safety-Kleen filed this adversary proceeding in bankruptcy court in the District of Delaware, challenging DHEC's actions and seeking injunctive relief. The district court granted Safety-Kleen's motion for withdrawal of reference and transferred the case to the District of South Carolina, where the Official Committee moved to intervene. The district court in South Carolina denied the Committee's motion, but permitted it to participate as amicus curiae.

In its complaint Safety-Kleen asserts that it has a due process right to additional capacity. It also asserts that DHEC's attempt to close Pinewood violates the Equal Protection Clause, the First Amendment, the dormant Commerce Clause, and RCRA. As soon as the case was transferred to South Carolina, Safety-Kleen pressed its motion for a preliminary injunction. DHEC, on the other hand, moved to dismiss Safety-Kleen's complaint on the merits and on the ground that the *Rooker-Feldman* doctrine bars the action. DHEC also sought a determination that the automatic stay did not bar enforcement of the bond order. The district court ruled as follows: it held that *Rooker-Feldman* did not bar the suit; it denied Safety-Kleen's motion for a preliminary injunction; it concluded that the bond order was subject to the automatic stay; it denied DHEC's motion to dismiss the suit on the merits, but certified the dismissal question for interlocutory review under 28 U.S.C. § 1292(b); and it granted Safety-Kleen a thirty-day injunction pending this appeal.

The parties and the Official Committee filed notices of appeal. DHEC, however, failed to file with this court a timely application for permission to appeal the denial of the motion to dismiss. The district court recertified the question for review, and DHEC then filed an application for permission to appeal, which is still pending. After the expiration of the thirty-day injunction, we denied Safety-Kleen an injunction pending appeal.

## II.

DHEC argues that the *Rooker-Feldman* doctrine bars Safety-Kleen's suit because the suit would require federal court review of the South Carolina Court of Appeals' decision. The *Rooker-Feldman* doctrine holds that "lower federal courts generally do not have [subject-matter] jurisdiction to review state-court decisions." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997). *See also D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The *Rooker-Feldman* doctrine precludes "review of adjudications of the state's highest court [and] also the decisions of its lower courts." *Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997). The *Rooker-Feldman* bar extends not only to issues actually decided by a state court but also to those that are "inextricably intertwined with questions ruled upon by a state court." *Plyler*, 129 F.3d at 731 (4th Cir. 1997) (internal quotation marks omitted). A federal claim is "inextricably intertwined" with a state court decision if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Id.* (internal quotation marks omitted). The district court held that *Rooker-Feldman* does not bar Safety-Kleen's suit, and our review of that ruling is de novo. *See Guess v. Bd. of Med. Exam'rs*, 967 F.2d 998, 1002 (4th Cir. 1992).

Again, DHEC argues that Safety-Kleen cannot succeed on its federal claims unless we reexamine issues decided by the South Carolina Court of Appeals. We disagree. The issue before the South Carolina Court of Appeals was whether and under what conditions Safety-Kleen was entitled to a final permit to operate Pinewood. Specifically, the state court held that Safety-Kleen was entitled to a permit allowing for the storage of up to 2250 acre-feet of total waste. Safety-Kleen's federal suit assumes that the Court of Appeals correctly decided that its permit is limited to 2250 acre-feet of space for hazardous and nonhazardous waste.[3] Safety-Kleen concedes that it has

---

[3]In certain places Safety-Kleen's complaint could be read to suggest that it is challenging the Court of Appeals' determination that the single cap operates retrospectively as well as prospectively. *See, e.g.*, Compl. ¶ 6. However, all of the arguments in Safety-Kleen's appellate papers

exhausted all of its permitted space. It claims, however, that with all of its permitted space now exhausted, the Constitution and RCRA require DHEC to allow it to store additional waste.

Safety-Kleen's claims do not require us to review any issues "actually decided" by the South Carolina Court of Appeals. The Court of Appeals never considered the consequence of Safety-Kleen's exhaustion of all of its permitted space. Safety-Kleen's claims also do not require us to review any issues "inextricably intertwined" with any matters decided by the Court of Appeals. It is consistent to say that under state law Safety-Kleen has exhausted all of its permitted space and that it still has a federal entitlement to additional capacity. In sum, Safety-Kleen's claims do not require us to review the South Carolina Court of Appeals decision, and *Rooker-Feldman* therefore does not bar this action.

## III.

Safety-Kleen argues that the district court erred in denying it a preliminary injunction to enjoin DHEC from enforcing the closure order. First, Safety-Kleen claims that the district court applied the wrong legal standard in evaluating whether it was entitled to a preliminary injunction. Second, it claims that even if the court applied the correct standard, the court nonetheless erred in denying an injunction. We hold that even if the district court applied the wrong legal standard, Safety-Kleen is still not entitled to a preliminary injunction.

## A.

Safety-Kleen claims that the district court used the wrong standard in evaluating its likelihood of success on its claims. In evaluating whether to grant a preliminary injunction, a court should consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary

assume that the Court of Appeals correctly decided the issue. Further, Safety-Kleen's counsel represented at oral argument that it would not argue that the state court's decision on capacity was incorrect. Accordingly, we treat Safety-Kleen's claims as assuming that the state court's determination of the capacity issue was correct.

injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). The "likelihood of irreparable harm to the plaintiff" is the first factor that a court should consider. *See id.* A court's next step is to balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977). If the harm balance "tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991) (internal quotation marks and citation omitted). In other words, the plaintiff's case must at bottom present a "substantial question."

In its order denying a preliminary injunction, the district court outlined the standards applicable in evaluating preliminary injunction motions. The court correctly discussed the interplay between the balance of harm to the parties and the plaintiff's likelihood of success. The court concluded that Safety-Kleen would suffer irreparable harm if injunctive relief was denied. The court then said that it was "not convinced that [Safety-Kleen] will likely prevail on the merits of this controversy." Safety-Kleen claims that because the district court concluded that it would suffer irreparable harm, it was not required to make such a strong showing of likelihood of success. Rather, Safety-Kleen argues that it only had to raise a substantial question. We need not reach the question of whether the district court erred in requiring too much of Safety-Kleen on the "likelihood of success" scale. As we will discuss, Safety-Kleen's case does not in any event present a substantial question. Therefore, Safety-Kleen cannot meet the standard that it relies upon. Accordingly, even if the district court erred, the likelihood of success factor (considered at the "substantial question" level) would still weigh against the grant of a preliminary injunction.

B.

We turn now to a fuller discussion of whether the district court erred in denying a preliminary injunction. We review the decision to

grant or deny a preliminary injunction for an abuse of discretion. *See Rum Creek Coal Sales*, 926 F.2d at 358. We review factual determinations under a clearly erroneous standard and legal conclusions de novo. *See Direx Israel*, 952 F.2d at 815. The parties do not dispute the district court's finding that Safety-Kleen will suffer decidedly more harm than DHEC if a preliminary injunction is denied. Therefore, we will only discuss whether Safety-Kleen has presented a substantial question and the public's interest in the grant or denial of an injunction.

1.

Safety-Kleen asserts that DHEC is prohibited from denying Pinewood additional capacity for several reasons. Safety-Kleen claims that the closure order violates procedural due process, substantive due process, the Equal Protection Clause, the First Amendment, and the dormant Commerce Clause. Safety-Kleen also argues that RCRA preempts the order. We discuss Safety-Kleen's claims in turn.

a.

Safety-Kleen's first claim is that its procedural due process rights were violated by the closure order. In order to succeed on its procedural due process claim, Safety-Kleen must show that "there exists a liberty or property interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation" were constitutionally insufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). We conclude that Safety-Kleen has not presented a substantial question that it has a protectible property interest at stake. The Fourteenth Amendment itself does not create property interests. *See Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992). Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Safety-Kleen's procedural due process claim hinges on whether it can show that it has an entitlement to additional capacity. Safety-

Kleen concedes that it has filled all of its permitted space and that it would operate in violation of state law if it continued to accept waste. It argues, however, that it has a property right to additional capacity. As we will explain, the South Carolina environmental regulatory scheme does not create the entitlement that Safety-Kleen seeks. Safety-Kleen has made requests for additional space under three separate provisions of the South Carolina Hazardous Waste Management Regulations. First, Safety-Kleen requested that DHEC modify its permit to allow for more space. *See* 25 S.C. Code Ann. Regs. 61-79.270.42. DHEC has not refused this request outright. Rather, DHEC is requiring Safety-Kleen to comply with the normal notice and comment procedure for permit modification. Safety-Kleen argues that it has the right to bypass the normal notice and comment procedure and begin accepting waste immediately. Contrary to Safety-Kleen's assertion, the regulations permitting DHEC to modify an operator's permit simply do not allow Safety-Kleen to circumvent these procedures. The request for additional capacity is considered a proposed "Class 3 modification" to the permit. *See id.* 61-79.270.42 app. I(F)(1)(a). Under South Carolina law DHEC must follow notice and comment procedures before granting a Class 3 modification. *See id.* 61-79.270.42(c)(2). Perhaps Safety-Kleen will be entitled to a permit modification in due course, but it does not have an entitlement to bypass the notice and comment procedure. Therefore, the provision allowing DHEC to modify Safety-Kleen's permit does not create the immediate entitlement that Safety-Kleen seeks.

Safety-Kleen also requested that DHEC grant a temporary authorization to allow for additional capacity while the permit modification request is pending. *See id.* 61-79.270.42(e). DHEC denied this request. Safety-Kleen argues that it has an entitlement to receive such authorization. DHEC does have the power to issue a temporary authorization for additional space, *see id.*, and DHEC may grant the authorization immediately without following any public notice or comment procedures, *see id.* 61-79.270.42(e)(1). However, in order for DHEC to grant the temporary authorization request, the operator must be in compliance "with the standards of Part 264." *Id.* 61-79.270.42(e)(3)(i). One of the requirements of Part 264 is that the operator have adequate financial assurance for closure, post-closure, and third-party liability costs. *See id.* 61-79.264.143; 61-79.264.145; 61-79.264.147. Safety-Kleen has chosen to use surety bonds to satisfy

the financial assurance requirements. When an operator uses surety bonds, the bond issuer must be on the U.S. Department of Treasury's approved list. *See id.* 61-79.264.143(c)(1); 61-79.264.145(c)(1); 61-79.264.147(i)(2). Safety-Kleen does not have bonds from such an issuer and has not otherwise provided adequate financial assurance. Therefore, Safety-Kleen does not have an entitlement to receive temporary authorization.

Finally, Safety-Kleen requested additional space by filing an amendment to a pending permit renewal application. *See id.* 61-79.124.31. DHEC also rejected this request. While an operator may request additional space by filing an amendment to a pending renewal application, DHEC may not approve the amendment unless the operator follows a pre-application public comment procedure. *See id.* Safety-Kleen has not followed this procedure. Again, Safety-Kleen has no right to bypass this procedure and therefore does not have an entitlement to have its amendment approved.

The South Carolina environmental regulatory scheme does not create an entitlement to receive immediate additional space. Safety-Kleen nonetheless argues that either its dependence on the permit for its viability as a business or the stipulated agreement is sufficient to give the company a property interest. Safety-Kleen first argues that its dependence on the permit for its viability gives rise to a property interest. To have a property interest in a benefit, a person must have an entitlement to it. *See Roth*, 408 U.S. at 577. In this case South Carolina has an explicit procedure for acquiring additional space. There is nothing in the South Carolina scheme that allows us to presume that because Safety-Kleen's business viability depends upon receiving additional space, the state has implicitly created an entitlement to immediate additional space.

Safety-Kleen also argues that the stipulated agreement creates a property interest. Under the stipulated agreement Safety-Kleen was prohibited from applying for additional space until Pinewood was within three years of reaching its capacity. Pinewood had more than three years of space left the instant before the Court of Appeals' decision, but was immediately full once the decision was rendered. Safety-Kleen claims that the agreement created an expectancy that it would be allowed to apply for additional space without interruption

of its business. Safety-Kleen's argument is suspect, however, because the bind created by the South Carolina Court of Appeals decision was foreseeable and avoidable. Safety-Kleen had to know that either the DHEC Board or the South Carolina courts might reject the separate cap for nonhazardous waste. Nonetheless, while the permit was being litigated, Safety-Kleen accepted nonhazardous waste in a sufficient quantity that if the separate nonhazardous waste cap was rejected outright, Pinewood would become immediately full under its permit. Safety-Kleen could have avoided this contingency by limiting the amount of nonhazardous waste it accepted. Because this contingency was foreseeable and avoidable, Safety-Kleen cannot claim that it had an expectancy of uninterrupted waste collection.

In order to succeed on its procedural due process claim, Safety-Kleen must show that it has an entitlement to immediate additional capacity. Because Safety-Kleen does not have such an entitlement, its procedural due process claim does not raise a substantial question.

b.

Safety-Kleen's second claim is that it has a substantive due process right to additional capacity. To succeed on its substantive due process claim, Safety-Kleen must show that (1) it has a liberty or property interest; (2) the state deprived it of this liberty or property interest; and (3) the state's action falls "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995). As indicated above, Safety-Kleen cannot show an entitlement under state law to immediate additional capacity. And, we have no basis to conclude that it has such an entitlement because of any liberty or property interest embodied in the Constitution. Therefore, Safety-Kleen's substantive due process claim does not raise a substantial question.

c.

Safety-Kleen's third claim is that the closure order violates the Equal Protection Clause. It claims that the order is irrational because there is no showing that Pinewood is unsafe. The question is whether the closure order is rationally related to a legitimate state interest. *See*

*id.* As we have said, under state law DHEC can grant Safety-Kleen additional space only after public notice and comment procedures have been followed. It is rational to cap the amount of waste that an operator can collect and to allow the public an opportunity to comment before additional capacity is granted. Safety-Kleen's equal protection claim is therefore without merit.

d.

Safety-Kleen's fourth claim is that the closure order was issued in retaliation for its bankruptcy filing and was therefore in violation of the First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend I. Safety-Kleen would have a viable First Amendment claim if DHEC issued the closure order in retaliation for the bankruptcy filing. *See, e.g.*, *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986) (holding that the First Amendment prohibits state from taking administrative action for the sole purpose of forcing citizens to settle a lawsuit against the state). However, Safety-Kleen has proffered no evidence that DHEC issued the closure order in retaliation for the bankruptcy filing. DHEC issued the closure order the day after the South Carolina Supreme Court denied certiorari. The timing of the order strongly suggests that DHEC issued the order because Pinewood had exhausted all of its permitted space and not because Safety-Kleen had filed for bankruptcy. Because Safety-Kleen has proffered no evidence that DHEC's actions were retaliatory, its First Amendment claim does not raise a substantial question.

e.

Safety-Kleen's fifth claim is that the closure order violates the dormant Commerce Clause. Specifically, Safety-Kleen argues that closing Pinewood will unduly burden the interstate market in hazardous waste disposal. Because Safety-Kleen does not claim that DHEC has discriminated against interstate commerce in favor of in-state commerce, it must show that DHEC's actions are "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). It does not appear that Safety-Kleen will be able to meet this high standard. *See Chambers Med. Techs. v. Bryant*, 52 F.3d 1252, 1261-62 (4th Cir. 1995) (upholding cap on amount

of waste a facility could treat under this standard). The state has a legitimate interest in imposing a cap and in allowing public notice and comment before granting an operator additional space. Safety-Kleen has not shown that the burden of the cap and the opportunity for public notice and comment is "clearly excessive" in relation to the benefits of such measures. As a result, Safety-Kleen's dormant Commerce Clause claim does not raise a substantial question.

f.

Safety-Kleen's sixth claim is that RCRA preempts DHEC's closure order. RCRA authorizes the states to develop and implement their own hazardous waste management scheme "in lieu of the Federal program." 42 U.S.C. § 6926. A state must apply to the EPA for permission to administer its own program. *See id.* § 6926(b). The EPA will authorize a state to administer its own program if the state program is the "equivalent" of RCRA and its accompanying regulations. *Id.* A state may choose to impose "more stringent" regulations than those imposed by RCRA. *Id.* § 6929. In other words, "RCRA sets a floor, not a ceiling, for state regulation of hazardous wastes." *Old Bridge Chems., Inc. v. N.J. Dep't of Envtl. Prot.*, 965 F.2d 1287, 1296 (3d Cir. 1992). The EPA has authorized the South Carolina program.

In this case the provisions of the South Carolina environmental scheme dealing with the grant of additional space to an operator are identical in all material respects to the EPA's RCRA regulations. *Compare* 40 C.F.R. § 270.42(c) (Class 3 modifications to permit); *id.* § 270.42(e) (temporary authorization for Class 3 modification); *id.* § 124.31 (notice and comment procedure for amendment to permit renewal), *with* 25 S.C. Code Ann. Regs. 61-79.270.42(c) (Class 3 modifications to permit); *id.* 61-79.270.42(e) (temporary authorization for Class 3 modification); 61-79.124.31 (notice and comment procedure for amendment to permit renewal). Because the South Carolina scheme is essentially identical to the EPA's RCRA regulations, Safety-Kleen's preemption claim does not present a substantial question.

2.

We now turn to the question of whether the district court erred in concluding that the public interest weighs against the grant of an

injunction. We agree with the district court. As discussed above, South Carolina has a carefully crafted process for granting a waste disposal operator additional space. That process includes the opportunity for public notice and comment. Safety-Kleen seeks to bypass this procedure by demanding immediate additional capacity. The public has a strong interest in the opportunity for notice and comment. First, the notice and comment procedure allows individual citizens and groups that are affected by an expansion in waste operations to participate in the permitting process. If history is any guide, a number of citizens and interest groups will participate in any process for public notice and comment on whether Pinewood's capacity should be increased. Second, the notice and comment procedure allows for careful and deliberate consideration of whether it is environmentally safe to allow Safety-Kleen to store additional waste. The Pinewood facility is located in an environmentally sensitive area. The facility is a mere 1200 feet from Lake Marion, a popular recreational spot and a source of drinking water for several thousand people. The facility is adjacent to over 8500 acres of forest and wetlands. The public has a strong interest in ensuring that DHEC carefully considers whether additional capacity is warranted. *See Coleman v. Paccar Inc.*, 424 U.S. 1301, 1307 (1976) (vacating stay of enforcement of federal motor vehicle safety standard in part because of public's strong interest in safety); *see also Ark. Peace Ctr. v. Ark. Dep't of Pollution Control*, 992 F.2d 145, 147 (8th Cir. 1993) (staying preliminary injunction in part because of potential environmental harm if an injunction was in force). We agree with the district court that the public interest weighs in favor of denying an injunction against DHEC.

3.

In conclusion, we need not decide whether the district court applied an incorrect legal standard in evaluating Safety-Kleen's likelihood of success on its claims. Safety-Kleen has not presented a substantial question on any of its claims, and the public has a strong interest in the denial of a preliminary injunction. Accordingly, the district court did not abuse its discretion in denying Safety-Kleen's motion for a preliminary injunction.

IV.

DHEC appeals the district court's determination that the bond order (that is, DHEC's efforts to enforce the financial assurance regulations) is subject to the automatic stay. DHEC argues that the order is exempt from the automatic stay pursuant to the regulatory exception contained in 11 U.S.C. § 362(b)(4). We have jurisdiction because the denial of relief from the automatic stay is a final, appealable order. *See Grundy Nat'l Bank v. Tandem Mining Corp.*, 754 F.2d 1436, 1439 (4th Cir. 1985); *see also Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997); *Orix Credit Alliance v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 726 (11th Cir. 1995); *Eddleman v. United States Dep't of Labor*, 923 F.2d 782, 784 (10th Cir. 1991); *Sonnax Indus., Inc. v. Tri Components Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1283 (2d Cir. 1990).[4] The district court concluded without explanation or analysis that the regulatory exception did not apply to the bond order. We reverse the district court and hold that the regulatory exception applies to the bond order.

When a debtor files for bankruptcy, § 362(a) automatically stays creditor actions against the debtor that may impact the bankruptcy estate. A chief purpose of the automatic stay is to allow for a system-

---

[4]In *Grundy* we held that the denial of relief from an automatic stay is a final, appealable order under 28 U.S.C. § 158(d). That section allows us to review "final decisions" by the district court when it acts in its bankruptcy appellate capacity. In this case, however, the district court was not reviewing a decision by the bankruptcy court. Rather, the court issued the challenged order as part of its original jurisdiction. *See, e.g.*, *Sonnax Indus.*, 907 F.2d at 1283 (concluding that when a district court withdraws the reference, it then acts as a trial court as part of its original jurisdiction). Therefore, 28 U.S.C. § 158(d) is inapplicable and the basis for our appellate jurisdiction is limited to 28 U.S.C. §§ 1291 and 1292. *See Capitol Credit Plan v. Shaffer*, 912 F.2d 749, 752 (4th Cir. 1990). However, what constitutes a "final decision" under § 158(d) is also a "final decision" in a bankruptcy case under § 1291. *See, e.g.*, *Hatcher v. Miller (In re Red Carpet Corp.)*, 902 F.2d 883, 890 n.5 (11th Cir. 1990); *United States v. Nicolet, Inc.*, 857 F.2d 202, 204 (3d Cir. 1988). Therefore, *Grundy* dictates that the denial of relief from the automatic stay is a final, appealable order under § 1291.

atic, equitable liquidation proceeding by avoiding a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 55 (2d Cir. 1976). However, the automatic stay does not apply to any state action "to enforce [a] governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment." 11 U.S.C. § 362(b)(4). The question is whether the financial assurance requirements here are part of South Carolina's "police and regulatory power."

The difficulty in applying this exception comes in distinguishing between situations in which the state acts pursuant to its "police and regulatory power" and situations in which the state acts merely to protect its status as a creditor. To make this distinction, we look to the purpose of the law that the state is attempting to enforce. If the purpose of the law is to promote "public safety and welfare," *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997), or to "effectuate public policy," *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986) (internal quotation marks omitted), then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," *Universal Life Church*, 128 F.3d at 1297, or to "adjudicate private rights," *Edward Cooper Painting*, 804 F.2d at 942 (internal quotation marks omitted), then the exception is inapplicable. The inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case. *See United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 523 n.6 (8th Cir. 1990); *United States v. Grooms*, No. Crim. A. 96-00071-C, 1997 WL 578752, at *3 (W.D. Va. Aug. 29, 1997). Of course, many laws have a dual purpose of promoting the public welfare as well as protecting the state's pecuniary interest. The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable. Rather, we must determine the *primary* purpose of the law that the state is attempting to enforce. *See Yellow Cab Coop. v. Metro Taxi, Inc. (In re Yellow Cab Coop.)*, 132 F.3d 591, 597 (10th Cir. 1997); *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 367-68 (6th Cir. 1997); *EEOC v. Rath Packing Co.*, 787 F.2d 318,

324 (8th Cir. 1986). *But see Universal Life Church*, 128 F.3d at 1299 ("Only if the action is pursued *solely* to advance a pecuniary interest of the governmental unit will the automatic stay bar it." (emphasis added) (internal quotation marks omitted)). Likewise, the fact that the state action requires the debtor to make an expenditure does not necessarily mean that the regulatory exception is inapplicable. *See, e.g., Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.)*, 805 F.2d 1175, 1186 (5th Cir. 1986) (holding that the EPA could force debtor to comply with environmental regulations even though compliance would cause debtor to spend money).

In considering whether the regulatory exception applies to environmental laws, courts often focus on whether deterrence is the primary purpose of the law. For example, in *United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir. 1988), the court considered whether the bankruptcy stay applied to the EPA's efforts to pursue a CERCLA suit to recover clean-up costs against the debtor. The EPA conceded that the plain language of the regulatory exception did not allow the agency to enforce a monetary judgment. *See* 11 U.S.C. § 362(b)(4) (limiting state under its police and regulatory power to enforcing "judgment[s] other than . . . money judgment[s]"). Nevertheless, the EPA wanted to obtain a judgment against the debtor for a specific monetary amount. The Third Circuit agreed with the EPA. The court determined that CERCLA actions "interject[ ] a valuable deterrence element into the CERCLA scheme, ensuring that responsible parties will be held accountable for their environmental misdeeds." *Nicolet*, 857 F.2d at 210. *See also City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991) (holding that CERCLA suits fall within regulatory exception because such suits "provide an effective deterrent to violators, who will be forced to pay for the government's costs in responding to their violations"). Because the primary purpose of CERCLA suits is to deter environmental misconduct, the court held that the regulatory exception applied "up to and including entry of a monetary judgment." *Nicolet*, 857 F.2d at 210.

Safety-Kleen claims that DHEC's attempt to enforce the financial assurance requirements (which form the basis for the bond order) amount to "grant[ing] [the state] a preference not afforded the other creditors in the bankruptcy proceeding." Appellant's Answering & Reply Br. at 39. We disagree. The financial assurance regulations are

within the regulatory exception because they serve the primary purpose of deterring environmental misconduct. Stated more positively, the regulations serve to promote environmental safety in the design and operation of hazardous waste facilities. The incentive for safety is obvious: the availability and cost of a bond will be tied directly to the structural integrity of a facility and the soundness of its day-to-day operations. When the EPA promulgated its financial assurance regulations (South Carolina's regulations are essentially parallel), it spelled out how the regulations would promote environmental protection at active hazardous waste facilities. Specifically, the EPA emphasized that the financial assurance requirements would give landfill owners and operators "an incentive to locate, design, and operate facilities to minimize closure and post-closure costs" and to "improve operating procedures and reduce the risk of accidents." Standards Applicable to Owners and Operators of Hazardous Waste Treatment, Storage, and Disposal Facilities; Financial Requirements, 47 Fed. Reg. 15032, 15044-45 (Apr. 7, 1982) (explaining benefits of financial assurance requirements). To put it more bluntly, sloppy "design and operating procedures . . . are more likely to be avoided" with the financial assurance requirements and the resulting incentive to reduce bond costs. *Id.*

As we see it, the primary purpose of South Carolina's financial assurance regulations is to deter environmental misconduct and to encourage the safe design and operation of hazardous waste facilities. This is a clear exercise of the state's regulatory power. Accordingly, we hold that the regulatory exception applies to DHEC's issuance and enforcement of the bond order. The bankruptcy stay does not apply to these efforts.

V.

DHEC attempts to appeal the district court's order denying its motion to dismiss Safety-Kleen's complaint for failure to state a claim. We decline to permit an appeal from this interlocutory order. The district court certified the dismissal question for review under 28 U.S.C. § 1292(b). When a district court certifies a question for interlocutory review, the appellant must, within ten days, file with the court of appeals an application for permission to appeal. *See id.* The ten-day filing requirement is jurisdictional and therefore may not be waived. *See Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). In

this case DHEC failed to file an application with us and did not realize its mistake until two and one-half months after the ten-day period had passed. DHEC then filed a motion with the district court, requesting that it recertify the question for review. The district court recertified the dismissal question and DHEC then filed an application for permission to appeal. We hold that the underlying recertification was improper in this instance.

A district court has the power to recertify a question for review when the appellant fails to file the required application for permission to appeal. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 162 (1984) (Stevens, J., dissenting); *Marisol v. Giuliani*, 104 F.3d 524, 528 (2d Cir. 1997); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 247 (7th Cir. 1981). A district court's power (or discretion) to recertify is not unlimited, however. The consideration of whether to recertify is channeled through two steps. First, the district court should consider whether the appellant can show excusable neglect. (A lawyer's lack of knowledge of § 1292(b)'s requirement for an application to the court of appeals within ten days will not ordinarily constitute excusable neglect.) Second, if the appellant can show excusable neglect, the court should consider whether the appellee can show sufficient prejudice to warrant a denial of recertification. We note that several circuits have suggested that a district court should also consider the length of delay in deciding whether recertification is proper. *See, e.g.*, *Marisol*, 104 F.3d at 528. We do not view length of delay as a separate factor for consideration. Instead, length of delay simply bears on the matters of excusable neglect and prejudice.

In this case DHEC has not shown excusable neglect. DHEC's counsel was simply unaware of the requirement of filing a timely application to the court of appeals. The district court thus abused its discretion in recertifying the question of the denial of DHEC's motion to dismiss the complaint. As a result, we deny DHEC's application for permission to appeal the dismissal question.

## VI.

The Official Committee of Unsecured Creditors of Safety-Kleen appeals the district court's denial of its motion to intervene. The Official Committee sought to intervene as a matter of right under Fed. R.

Civ. P. 24(a). Alternatively, the Committee sought permissive inter-vention under Rule 24(b)(2). Only DHEC opposed the Committee's motion. The district court denied the motion to intervene without any reasoning or explanation. Our review is for an abuse of discretion. *See Hazardous Waste Treatment Council v. South Carolina (In re Sierra Club)*, 945 F.2d 776, 779 (4th Cir. 1991).

Rule 24(a)(2) requires a district court to allow an applicant to inter-vene if its application is timely and if it "claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The Official Committee represents Safety Kleen's unsecured creditors, and these creditors have $750 million in claims against Safety-Kleen. The Official Committee argues that its group's substantial outstanding claims give it an interest in the case and that no existing party will adequately protect the interest of its group. In the alternative, the Official Committee seeks to intervene under Fed. R. Civ. P. 24(b). Rule 24(b)(2) allows the district court to permit an applicant to intervene "when an appli-cant's claim . . . and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). At oral argument DHEC's counsel could not offer anything to refute the Official Committee's argument that it was entitled to intervene to represent the interests of the unsecured creditors. In light of the fact that neither the district court nor DHEC have articulated any reason for not allowing the Official Committee to intervene, we conclude that the court abused its discretion in not permitting the Committee to intervene. We emphasize, however, that our decision on the intervention issue is limited to the particular circumstances of this case.

## VII.

In conclusion, we (1) affirm the determination that *Rooker-Feldman* does not bar Safety-Kleen's action; (2) affirm the denial of Safety-Kleen's motion for a preliminary injunction; (3) reverse the determination that the automatic stay bars DHEC's efforts to enforce the financial assurance requirements in South Carolina's environmen-tal regulations; (4) dismiss DHEC's interlocutory appeal from the

order denying its motion to dismiss the complaint; and (6) reverse the order denying the Official Committee's motion to intervene.

*AFFIRMED IN PART, REVERSED IN PART, AND DISMISSED IN PART*

WIDENER, Circuit Judge, Concurring:

While I share the extent of Judge Luttig's dissatisfaction with our circuit's *Blackwelder* decision and cases following, even if my reasoning may not be exactly the same as Judge Luttig's, I believe that Judge Michael's majority opinion correctly relates circuit precedent and affirm my concurrence in that opinion. I am confident that our court en banc will consider the matter as circumstances require.

LUTTIG, Circuit Judge, concurring:

I concur in all but Part III.A of the majority's opinion. I do not concur in that part of the court's opinion because I have long believed that our decisions in both *Blackwelder Furniture Co.* v. *Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), and *Rum Creek Coal Sales, Inc.* v. *Caperton*, 926 F.2d 353 (4th Cir. 1991), contravene Supreme Court precedents by overvaluing the inquiry into the relative equities of granting and denying a requested injunction to an extent that essentially denies any value whatsoever to the inquiry into the likelihood of success on the merits. Indeed, I believe that these opinions virtually eliminate altogether the inquiry into the likelihood of success on the merits — in doctrine, though, as I explain below, no longer in practice — through their holdings that the balance of equities is largely determinative of the appropriateness of an injunction and that if there is a decided tip of the balance of equities in favor of the plaintiff, then the injunction should be granted upon a showing merely that the issues presented are "fair ground for litigation."

The Supreme Court has consistently applied the four-part test governing the decision on an injunction (the plaintiff's likelihood of success on the merits, the harm to the plaintiff in the absence of the injunction, the harm to the defendant upon grant of the injunction, and public interest) without ever distinguishing among the four parts as to

analytical order, priority, or weight. And it has collectively referred to these undifferentiated parts as "the traditional standard" for injunctions. *See Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 931 (1975).

The Supreme Court has never held that the hardships of the plaintiff and the defendant should be weighed first, before any inquiry into the likelihood of success on the merits is undertaken. *But see Blackwelder*, 550 F.2d at 195 ("[T]he first step in a Rule 65(a) situation is for the court to balance the 'likelihood' of harm to the plaintiff against the 'likelihood' of harm to the defendant.").

The Court has never held that the relative hardships are, together, the two principal inquiries of the four. *But see Blackwelder*, 550 F.2d at 196 ("The two more important factors are those of probable irreparable injury to the plaintiff without a decree and of likely harm to the defendant with a decree.").

It has never held, or even suggested, that the four inquiries are analytically interrelated. *But see Blackwelder*, 550 F.2d at 196 ("[A]ll four [questions] are intertwined and each affects in degree all the others.").

It has never held that the importance of the likelihood of success factor varies depending upon the magnitude of the difference between the harm that will be suffered by the plaintiff in the absence of the injunction and the harm that the defendant will suffer if the injunction is granted. *But see Blackwelder*, 550 F.2d at 195 ("[t]he importance of probability of success increases as the probability of irreparable harm diminishes"); *id.* (explaining that it is only when the relative harms are in "equipoise" that "the probability of success begins to assume real significance")(quoting with approval *West Virginia Conservancy* v. *Island Creek Coal Co.*, 441 F.2d 232, 235 (4th Cir. 1971)).

The Supreme Court has never held, under any circumstance, that it is sufficient for issuance of an injunction that the plaintiff not have engaged in frivolous litigation. *But see Blackwelder*, 550 F.2d at 195-96 (explaining that if the plaintiff's need for protection outweighs that of the defendant, it "is enough" for issuance of the injunction that the

plaintiff "has not embarked on frivolous litigation") (quoting *West Virginia Conservancy*, 441 F.2d at 235).

The Court has never even held that, if the balance of hardships *strongly* favors the plaintiff, then the injunction should ordinarily be granted, provided the questions presented are fair ones for litigation. *But see Blackwelder*, 550 F.2d at 195 (holding that "if a decided imbalance of hardship should appear in plaintiff's favor," it will ordinarily be enough that the plaintiff has raised questions going to the merit of the dispute that are so "serious, substantial, difficult and doubtful as to make them fair ground for litigation") (quoting *Hamilton Watch Co.* v. *Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)); *but compare Blackwelder*, 550 F.2d at 195, *with Ohio Oil Co.* v. *Conway*, 279 U.S. 813 (1929) (noting only that "[w]here the questions presented by an application for an interlocutory injunction are *grave*, and the injury to the moving party will be *certain* and irreparable, if the application be denied . . . while if the injunction be granted the injury to the opposing party . . . will be *inconsiderable*, . . . the injunction *usually will* be granted") (emphasis added)).

Much less has the Supreme Court ever held that if the balance of hardships tips in favor of the plaintiff — even decidedly — that the likelihood of success test is entirely displaced by some other formulation. *But see Blackwelder*, 550 F.2d at 195 (holding that "if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by Judge Jerome Frank's famous formulation. . . .").

And the Court most certainly has never held that if the hardship balance tips in favor of the plaintiff, then no showing whatsoever of the likelihood of success is required. *But see Blackwelder*, 550 F.2d at 196 (holding that if the balance of hardships "is struck in favor of plaintiff," then the plaintiff "need not show a likelihood of success" on the merits, provided that a "serious" question is presented).

To the contrary of all of the above, barely a year and a half before this court decided *Blackwelder*, the Supreme Court — in an opinion nowhere even cited or referenced in our *Blackwelder* decision — discussed and applied the applicable four-factor test, *precisely as had the district court whose opinion we criticized and whose judgment we*

*reversed in Blackwelder*; did not distinguish among any of the four factors as to their order of consideration, hierarchy of importance, or comparative weights; characterized this four-factor test as the "traditional" standard governing injunctions; and unmistakably required that the plaintiff show a likelihood of success on the merits in order to prevail. Said the Court, in clear and unequivocal terms:

> The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits.

*Doran* v. *Salem Inn, Inc.*, 422 U.S. at 931; *id.* at 932 ("The other inquiry relevant to preliminary relief is whether respondents made a sufficient showing of the likelihood of ultimate success on the merits.").

And *Doran* was a full, authored opinion for the entire Supreme Court, written by no less a figure than the present Chief Justice of the United States. This, in stark contrast to the opinion that was little more than the presumptive authority for the standard we adopted in *Blackwelder*.* That authority, *Ohio Oil Co.* v. *Conway*, 279 U.S. 813, was a single-page, *per curiam* opinion, in a case in which the Court acknowledged that a determination of the likelihood of success on the merits was impossible because the motion for injunction was submitted on the basis of *ex parte* affidavits which were in conflict as to the material facts. Tellingly, the Supreme Court itself has cited *Ohio Oil Co.* only a handful of times in the three-quarters of a century since its decision, and it has not done so at all since 1945, over half a century ago.

I believe that we are complacent about, if we did not also adopt, our Circuit's total inversion of the correct injunction standard, because of its comparative ease of application (ease, that is, as compared to the more intellectually rigorous and demanding inquiry into

---

*See Blackwelder*, 550 F.2d at 194 (surmising that *Sinclair Refining Co.* v. *Midland Oil Co.*, 55 F.2d 42 (4th Cir. 1932), which we said announced the correct standard in the Fourth Circuit, "was doubtless derived from *Ohio Oil Co.* v. *Conway*, 279 U.S. 813 (1929)").

the legal merits of the claims) and the refuge from accountability that it provides us as judges, as a consequence of the fact that we can never be proven wrong in our "balancing" of prospective harms.

Who doubts, for instance, the ease with which we can lean back in our high-back chairs and speculate as to the "harms" that might befall one or the other of the parties, or the public generally, depending upon whether we award or withhold the requested injunction; or the contrast of that ease with the genuine effort required to research and actually read the governing law under the constraints of time, and then methodically apply that law to the often-complicated facts that are presented by injunction requests? By the same token, who would seriously dispute that, whereas the likelihood that a party will succeed on the merits of its claim is objectively ascertainable, and therefore meaningfully reviewable, through the application of neutral principles of reported law to the particular facts of the case, one's subjective evaluation of the relative harms that might be suffered, and the policies that will be advanced and impeded, as a result of granting or denying an injunction, can scarcely be subjected to any such scrutiny? How can it be proved that another's view of the equities, or of the policy implications, is more correct than mine? It cannot be.

Even if reasons were relevant to such a departure from clear Supreme Court precedent (which, of course, they are not), these reasons of ease and of defeat of accountability should be discomforting to those who believe that the judiciary, before all others, should be both intellectually rigorous and fully accountable to the public we serve. For at the end of the day, other than conscience, it is only analytical rigor, and the accountability that such renders possible, that can restrain a judiciary that serves for life and at the pleasure of no one. Of course, that the intellectual scrupulousness of conventional jurisprudence (*i.e.*, the painstaking determination of law from precedent and the meticulous application of that law to the particular facts of the litigation), and the resulting accountability, does serve as a bridle upon the courts is, together with the fact that it demands more of the intellect, precisely why this scrupulousness has been eschewed in many quarters in favor of the intellectually lazier and jurisprudentially misbegotten enterprise of decision by personal policy preference.

The saving grace that I find for our bald departure from the standard repeatedly articulated by the Supreme Court is that our fealty to

*Blackwelder* and *Rum Creek Coal* has been, at least in recent years, more rhetorical than real, as we have hewed closer and closer to the Supreme Court standard. And even that rhetorical allegiance has noticeably been on the wane. In actual practice, even though not in formal doctrine, we have virtually without exception insisted upon a showing by the plaintiff of the likelihood of success on the merits of his claim before we have either entered an injunction in the trial court or affirmed the trial court's entry of an injunction on appeal — and we have required this showing not merely at the threshold but also regardless of whether the balance of harms decidedly favored the plaintiff. Relatedly, we have all but abandoned the instruction that the balancing of harms is the preeminent of the injunction inquiries. And for their part, and to their credit, litigants have not dared to argue their causes even principally, much less alone, on the strength of the equities at stake, whatever they were.

We have returned to the proper standard out of wise recognition that we departed from that standard in *Blackwelder* and *Rum Creek Coal* at our peril, and that the Supreme Court was not likely to long tolerate our defiance. That we have done so is good. However, for the integrity of the law and for the public respect that follows only integrity, I believe that we should also reestablish the doctrinal symmetry between our caselaw, on the one hand, and our practice and Supreme Court precedent, on the other, that was jettisoned with our decisions in *Blackwelder* and *Rum Creek Coal*. I do not believe that the instant case presents the appropriate opportunity for this realignment, but I would like to think that we would welcome such an opportunity should one present itself.